UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

MICKEY FOWLER, LEISA MAURER, and a class of similarly situated individuals,

    Plaintiffs,

v.

MARCIE FROST, Director of the Washington State Department of Retirement Systems,

    Defendant.

NO. _____

**CLASS ACTION COMPLAINT**

Plaintiffs in this class action complaint allege as follows:

## I. NATURE OF THE ACTION

1. This action is brought under 42 U.S.C. §1983 for a violation of the Takings Clause of the United States Constitution's Fifth Amendment, applicable to the states through the Fourteenth Amendment.

2. Plaintiffs bring the action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all public school teachers who transferred from the Washington State Teachers Retirement System ("TRS") Plan 2 to TRS Plan 3 between 1996 and January 20, 2002.

3. When Plaintiffs withdrew their contributions and interest from their TRS Plan 2 individual accounts to transfer to new TRS Plan 3 individual accounts, not all of the interest

**CLASS ACTION COMPLAINT** - 1
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

earned on their contributions at the 5.5% annual interest rate was transferred to their new TRS Plan 3 accounts and this interest remains in the TRS Plan 2/3 account.

4. Defendant refuses to provide Plaintiffs all of the interest that their contributions earned in their TRS Plan 2 individual accounts.

5. Defendant's failure to provide Plaintiffs the interest earned on their accumulated contributions affects more than 20,000 public school teachers who transferred from TRS Plan 2 to Plan 3.

6. For years Plaintiffs have sought relief in the Washington state court system. The Thurston County Superior Court and the Washington Court of Appeals have both declined or refused to consider Plaintiffs' Takings claim. Although the seizure of property occurred almost 20 years ago, the Washington Court of Appeals said it was "premature" to resolve Plaintiffs' Takings claim.

7. The Washington Supreme Court recently denied review of the Court of Appeals' decision.

8. Plaintiffs are harmed by Defendant continuing to retain the interest earned on Plaintiffs' accumulated contributions. Plaintiffs therefore request that the Court resolve their Takings claim.

## II. JURISDICTION

9. This actions is brought under 42 U.S.C. §1983 and 28 U.S.C. §1331.

## III. PARTIES

10. Plaintiff Mickey Fowler is a resident of King County, Washington, and he works as a public school teacher in the Snoqualmie Valley School District.

11. Plaintiff Leisa Maurer (f/k/a Leisa Fowler) is a resident of King County, Washington, and she works as a public school teacher in the Snoqualmie Valley School District.

12. Defendant Marcie Frost is the Director of the Washington State Department of Retirement Systems (hereinafter "DRS"). At all times alleged in this Complaint, defendant was

CLASS ACTION COMPLAINT - 2
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

acting under the color of state law. By statute defendant has "complete charge of and supervisory powers" over DRS. RCW 41.50.020.

## IV. CLASS ACTION ALLEGATIONS

13. Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who transferred from TRS Plan 2 to TRS Plan 3 between 1996 and January 20, 2002.

14. The class consists of more than 20,000 individuals. The members of the class are so numerous that joinder of all class members is impracticable.

15. Plaintiffs will fairly and adequately protect the interests of the class members and have retained counsel competent and experienced in class actions and employee benefits litigation. Plaintiffs have no interests that are adverse or antagonistic to those of the class.

16. Because the amount of interest that was not received by Plaintiffs and individual class members is relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to individually seek redress for the wrongful conduct alleged herein.

17. Common questions of law and fact exist to all members of the class. The questions of law and fact common to the class include, but are not limited to:

    a. Whether class members have a common law property right to the interest earned on their contributions in TRS Plan 2 at the promised rate of 5.5% annual interest compounded quarterly that is protected by the United State Constitution;

    b. Whether class members have a statutorily created property right to the interested earned on their contributions in TRS Plan 2 at the promised rate of 5.5% annual interest compounded quarterly that is protected by the United State Constitution; and

    c. The appropriate remedy for the class members.

CLASS ACTION COMPLAINT - 3
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

## V. FACTS

**The Retirement Plans: TRS Plan 2 and TRS Plan 3.**

18. Plaintiffs ("plaintiffs" includes class members) are public school teachers who were previously members of TRS Plan 2, under which part of each paycheck was deducted to contribute toward retirement. RCW 41.32.780; RCW 41.32.042. DRS managed the accumulated contributions by tracking the contributions and interest in individual member accounts. RCW 41.32.042. The funds therefrom were invested through a large comingled trust fund. In TRS Plan 2, when a teacher retires, these funds go to fund the pension payments.

19. In 1996, the Washington Legislature created TRS Plan 3 and gave TRS Plan 2 members an option to transfer their accumulated contributions and accrued interest to TRS Plan 3. RCW 41.32.817.

20. If a teacher chose to transfer from TRS Plan 2 to TRS Plan 3, *the teachers' funds* (accumulated contributions with interest) were withdrawn from TRS Plan 2 and transferred to TRS Plan 3 individual investment (defined contribution) accounts. RCW 41.32.817(5); 41.32.831(2); RCW 41.34.060.

21. The *employers' contributions* for transferring teachers remained in the TRS Plan 2/3 fund to provide a pension at one-half the pension amount the teachers would have received in TRS Plan 2. RCW 41.32.840(1).

22. The Legislature also provided a transfer incentive payment to encourage transfers to TRS Plan 3 before January 1998, by matching a portion of the funds placed by the teachers in their TRS 3 accounts. RCW 41.32.8401.

23. Plaintiffs here all transferred their accumulated contributions and earned interest from their individual TRS Plan 2 accounts to new individual TRS Plan 3 defined contribution accounts.

CLASS ACTION COMPLAINT - 4
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

**Plaintiffs Have a Constitutionally Protected Common Law Property Right and Constitutionally Protected Statutory Property Right to Receive All of the Interest Earned on Their Contributions in TRS Plan 2 at the Interest Rate of 5.5% Annual Interest Compounded Quarterly.**

24. The Takings Clause of the Fifth Amendment, through the Fourteenth Amendment, prohibit states from taking private property for public use without just compensation.

25. Core common law property rights that pre-date the Constitution are protected by the Taking Clause.

26. The common law for more than 250 years has recognized the property right that an owner of funds held in an account has to the interest that is earned on those deposited funds.

27. The common law rule "interest follows principal" recognizes a protected property interest in earned interest income.

28. The common law rule, and also the industry standard, is that interest is earned on funds held in an account from the date(s) of deposit to the date(s) of withdrawal.

29. Based on these common law rules protected by the Constitution, Plaintiffs have a protected property right in all interest that accrues on their mandatory employee contributions in TRS Plan 2, from the time the contributions were deposited to the precise date they withdraw all funds from the Plan 2 accounts.

30. No statute, rule, or practice could authorize Defendant to withhold that property from Plaintiffs without violating the Takings Clause of the Fifth Amendment.

31. A statute may create new property rights that are protected by the Constitution.

32. RCW 41.04.445(4) mandated that when Plaintiffs withdrew their funds from their TRS Plan 2 accounts to transfer and deposit the funds into their new individual TRS Plan 3 accounts, that Plaintiffs receive all "accrued interest" earned on their funds.

33. Plaintiffs have a statutorily created, and thus Constitutionally protected, property right to the interest earned on their funds at the stated rate of 5.5% annual interest compounded quarterly.

CLASS ACTION COMPLAINT - 5
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

### Defendant's Erroneous Accounting Practice

34. The industry standard and the common law rule is that the owner of funds on deposit in an interest-bearing account earns interest on the funds from the date of deposit to the date of withdrawal, *i.e.*, daily interest

35. When employees owe DRS money for restoring previously withdrawn contributions, DRS charges the employees daily interest from the date of the withdrawal to the date the contributions are re-paid.

36. Due to a previously secret accounting practice, however, DRS did not pay the Plaintiffs or other public employees interest from the date they made their contributions to the date the contributions were withdrawn from their individual accounts.

37. When the Plaintiffs' funds were in TRS Plan 2, DRS had an undisclosed practice under which DRS "posted" or credited interest to TRS members' individual accounts on the fourth Saturday of the last month in each quarter, and the amount of interest credited by the defendant is based only on the ending account balance in the prior quarter. DRS therefore paid no interest to Plaintiffs on contributions during the quarter in which they are deposited.

38. Plaintiffs' deposits made during a quarter did not receive even simple interest, *i.e.*, interest to be added to the principal at the end of the quarter.

39. In addition, when a TRS Plan 2 account was shown as zero ($0) in DRS's database on the fourth Saturday of a quarter on which interest was credited, for whatever reason — even when the zero balance was just a computer accounting entry and the money actually remained in the account through the end of the quarter — Plaintiffs received no interest at all for that entire quarter on Plaintiffs' balance at the end of the previous quarter, as well as no interest for the deposits made either during that quarter or the previous quarter.

40. In DRS's software, the data entry (posting) dates, rather than the dates money was actually withdrawn, determined whether members received any interest in a quarter.

41. DRS's computer program treats employee contributions as withdrawn before the end of a quarter even though the transfer occurs after the quarter ends.

CLASS ACTION COMPLAINT - 6
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

42. A DRS document shows that employees were considered to have no account balance at the end of the quarter (March 31), and therefore the computer provides the employees "no interest for quarter" on the previous quarter's balance – even when actually the "transfer occurs" for the employees after the quarter ends, on April 2:

Earnings example – Plan 2 to Plan 3 Self-Directed Accounts

| March 15 | March 28 | March 31 | April 2 |
|---|---|---|---|
| Transfer reported by employer | Account balance begins process of transfer to Plan 3 | No account balance at end of quarter – no interest for quarter | Transfer occurs – member then earns return on investments |

43. Plaintiffs were never told that they had not received all of the interest earned on their funds, and based on their account statements it was mathematically impossible for the Plaintiffs to determine they were not receiving all of the interest earned on their contributions in TRS Plan 2.

44. Plaintiffs effectively received less than the stated 5.5% annual interest rate, compounded quarterly, on their contributions.

45. DRS's interest practice was kept secret, while Plaintiffs were repeatedly told that their contributions earned 5.5% annual interest compounded quarterly.

**Plaintiffs' Interest Remains in the Wrong Account, the TRS Plan 2/3 Fund, When It Belongs in Their Individual TRS Plan 3 Defined Contribution Accounts.**

46. Most class members transferred from TRS Plan 2 to TRS Plan 3 in 1996-97. The transfer to TRS Plan 3 meant that Plaintiffs would cut in half their defined benefit pension (from 2% of final compensation per year of service down to 1% per year). The employers' contributions, plus investment gains, remained in the TRS Plan 2/3 fund to pay for the reduced defined benefit.

CLASS ACTION COMPLAINT - 7
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

47. In exchange for the reduced pension benefit in TRS Plan 3, Plaintiffs withdrew all funds in their Plan 2 member accounts, including interest, to place these funds (plus the transfer incentive) into new self-directed investment accounts in TRS Plan 3.

48. The beginning principal balance of the Plaintiffs' individual TRS Plan 3 accounts was thus the total of all the Plaintiffs' TRS Plan 2 contributions, with all the interest that accrued in the those TRS Plan 2 accounts, plus a transfer incentive.

49. The amount transferred to the Plaintiffs' TRS Plan 3 accounts was important because anything less than the full amount would diminish both future investment returns and the amount available for the Plaintiffs' retirements.

50. When the Plaintiffs transferred to TRS Plan 3, Plaintiffs did not receive all of the interest their contributions earned at the rate of 5.5% annual interest compounded quarterly.

51. Plaintiffs' property remains in the wrong account, *i.e.*, the interest remains in the TRS Plan 2/3 fund rather than the Plaintiffs' individual TRS Plan 3 defined contribution accounts. The not-transferred funds earned interest at the accrued 5.5% annual interest rate, or at the rate specified in RCW 41.50.145(2) and RCW 41.45.035.

## VI. PRIOR PROCEEDINGS

52. In 2002, Public Employee Retirement System ("PERS") member Jeff Probst discovered that he had not received all of the interest earned on his contributions when he transferred from PERS Plan 2 to PERS Plan 3. He subsequently filed both an administrative claim with DRS and a class action in the Thurston County Superior Court.

53. The DRS Presiding Officer expressly acknowledged that Probst (and Plaintiffs) did not receive 5.5% annual interest rate compounded quarterly on their contributions, but she said the interest earned on the accounts is "what the agency determines it to be, not simply the stated rate."

54. The Presiding Officer denied the administrative claim.

55. Probst filed a petition for judicial review after his administrative claim was rejected, which was consolidated with the class action.

CLASS ACTION COMPLAINT  - 8
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

56. Probst settled his petition for judicial review and the class action claims of all PERS members (and some TRS members) prior to a dispositive ruling from the trial court. The settlement resolved the claims of those class members who transferred from TRS Plan 2 to TRS Plan 3 after January 20, 2002, while it preserved the claims of the teachers who transferred to TRS Plan 3 prior to that date, *i.e.*, the Plaintiffs' claims in this action.

57. While the *Probst* settlement was pending, unbeknownst to the Plaintiffs and counsel, in 2007 the Washington Legislature enacted a statute concerning crediting interest. Ch. 493, Laws of Washington 2007, codified at RCW 41.50.033.

58. After the *Probst* settlement, Plaintiffs filed a supplemental complaint in 2009 in Thurston County Superior Court, filed under the same cause number as the settled *Probst* claims.

59. Thurston County Superior Court Judge Paula Casey ruled the Plaintiffs' claim was not barred by the statute of limitations under the discovery rule, but she said the 2007 statute gave DRS authority to determine what interest was credited to the teachers' contributions more than a decade earlier.

60. The Plaintiffs appealed. The Washington Court of Appeals reversed, ruling (based on the facts summarized at ¶¶38-49 above) that even if the 2007 statute gave DRS some discretion over interest, DRS had abused its discretion in the 1990s (and earlier) by arbitrarily and capriciously withholding some of the interest earned when the teachers' funds were in their TRS Plan 2 accounts. *Probst v. Dep't of Retirement Systems*, 167 Wn.App. 180, 191-94, 271 P.2d 966 (2012).

61. The Court held that it was arbitrary and capricious for DRS to keep that interest because, among other reasons, DRS's quarterly posting method was contrary to industry standards and unfair because it deprived the teachers of some of the interest earned on their contributions. *Id.* at 193-94, referring to facts summarized above at ¶¶38-49.

62. The Court of Appeals thereafter "reverse[d] the DRS's order as it pertains to the class that the Fowlers represent and remand[ed] for further proceedings." *Id.* at 194.

CLASS ACTION COMPLAINT - 9
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

63. The Court of Appeals said it would not address the teachers' argument that DRS keeping earned interest and/or applying the 2007 statute retroactively to permit DRS to keep accrued interest is an unconstitutional taking of Plaintiffs' property. *Probst*, 167 Wn.App. at 183 n. 1. The Court said it would not reach the constitutional issues because it had resolved the case on other grounds. *Id.*

64. Following remand to the trial court, Plaintiffs' filed a motion to require DRS to calculate the interest that it had withheld from the Plaintiffs. DRS maintained, however, that the Court of Appeals had not resolved the case at all.

65. DRS argued that the Court of Appeals' mandate required a remand to DRS for rulemaking to create a new factual record and to issue a new retroactive rule that "can be applied in this case [to actions in 1996-97] and [upon which] a new administrative decision can be issued, which can then be appealed for further review if necessary."

66. DRS argued that the Court of Appeals' decision overturned the 5.5% annual interest rate. Plaintiffs disagreed, but if DRS were correct, the return on TRS Plan 2 accounts has the rate specified in RCW 41.45.035.

67. Thurston County Superior Court Judge Christopher Wickham granted DRS's motion to remand the case to DRS over Plaintiffs' opposition. Although there had been 10 years of litigation and the trial court said "[n]o case should take as long as this case has taken," and "this case needs closure[,]" he ruled that under the Administrative Procedure Act ("APA") the case should be remanded to DRS.

68. DRS has since said it would start a rulemaking process to renew and retroactively justify the interest policy that the Court of Appeals said was arbitrary and capricious. WSR 13-15-128. But it has taken no further action.

69. DRS said that issuance of the new rule justifying its practice could be followed by another administrative adjudication and decision, followed by an entirely new appeal through the courts. According to DRS, Plaintiffs would have to start all over again after DRS enacted a rule.

CLASS ACTION COMPLAINT - 10
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

70. Plaintiffs appealed again, contending, among other things, that the trial court's remand to DRS for retroactive rulemaking violated the Court of Appeals' mandate because rulemaking could not retroactively correct an "arbitrary and capricious" practice that had already been fully completed at that time of the majority of the Plan 3 transfers in 1996-97.

71. Plaintiffs also contended, as they did in the Superior Court, that the remand of the case to DRS wrongly denied them a hearing on their Takings claim.

72. The Court of Appeals rejected the appeal and said it was "premature" to rule on the Plaintiffs' Takings claim, even though the Plaintiffs' interest has remained in the wrong account (TRS Plan 2/3) for almost 20 years and the Plaintiffs have been denied that interest and their ability to direct the investment of those funds in their defined contribution TRS Plan 3 accounts for the same amount of time. 185 Wn.App. 1015 (2014) (unpublished).

73. Plaintiffs filed a petition for review in the Washington Supreme Court, which was denied. 347 P.3d 458 (2015).

## VII. CLAIMS

74. This action is brought under 42 U.S.C. §1983.

75. Defendant violated the Takings Clause in the Fifth Amendment, applied through the Fourteenth Amendment, by failing to pay the Plaintiffs all of the interest their contributions earned in TRS Plan 2 at the rate of 5.5% annual interest compounded quarterly.

76. Plaintiffs' property (accumulated interest) remains in the TRS Plan 2/3 account rather than in their TRS Plan 3 individual defined contribution accounts.

## VIII. RELIEF REQUESTED

Plaintiffs request relief as follows:

A. This action should be certified as a class action under Rule 23;

B. The Court should declare that defendant has violated the Takings Clause of the Fifth Amendment;

C. The Court should order Defendant to: (1) calculate the interest wrongly withheld from the Plaintiffs from the dates the Plaintiffs made the contributions to the dates they were

CLASS ACTION COMPLAINT  - 11
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536

withdrawn, (2) re-calculate the separate "transfer payment" paid into the TRS Plan 3 individual accounts to include the interest wrongly withheld, (3) calculate the earnings or interest on the funds that were not transferred from the dates the Plaintiffs transferred to TRS Plan 3, and from the dates of the transfer incentive payment, respectively, to the date the money is finally deposited into their Plan 3 accounts, and (4) transfer the funds calculated as remaining in the TRS Plan 2/3 account (and the remaining transfer payments) to the Plaintiffs' TRS Plan 3 accounts;

   D. The Court award reasonable costs and attorney fees, under the common fund doctrine and 42 U.S.C. §1988; and

   E. The Court grant such other relief as may be just and proper.

DATED this 1st day of June, 2015.

            Respectfully submitted,

            BENDICH STOBAUGH & STRONG, P.C.

*[signature]*

David F. Stobaugh, WSBA #6376
Stephen K. Strong, WSBA #6299
Stephen K. Festor, WSBA #23147
*Attorneys for Plaintiffs*

**CLASS ACTION COMPLAINT** - 12
Fowler\Federal\Complaint.doc

BENDICH, STOBAUGH & STRONG, P.C.
701 FIFTH AVENUE, SUITE 6550
SEATTLE, WASHINGTON 98104
(206) 622-3536