UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, et al.,

                    Plaintiffs,

        v.

MARCIE FROST, Director of the
Washington State Department of
Retirement Systems,

                    Defendant.

CASE NO. C15-5367 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DISMISSING PLAINTIFFS'
COMPLAINT WITHOUT
PREJUDICE

        This matter comes before the Court on Defendant Marcie Frost's ("Frost") motion

for summary judgment (Dkt. 14).  The Court has considered the pleadings filed in support

of and in opposition to the motion and the remainder of the file and hereby grants the

motion in part and denies it in part for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

**A.      Retirement Plans**

        Plaintiffs Mickey Fowler and Leisa Maurer ("Plaintiffs") are public school

teachers in the Snoqualmie Valley School District.  Dkt. 1 ("Comp.") ¶¶ 10–11; *see also*

Dkt. 18, Declaration of Stephen Festor ("Festor Dec."), App. at 97.  In Washington,

public school teachers participate in the Teachers' Retirement System ("TRS"), a public

retirement system managed by the Washington State Department of Retirement Services

("DRS"). Festor Dec., App. at 69–70. The TRS is comprised of three separate retirement plans: Plan 1, Plan 2, and Plan 3. *Id.* at 70.

Plaintiffs are current members of Plan 3, and former members of Plan 2. *See* Comp. ¶ 18; Festor Dec., App. at 97. As members of Plan 2, Plaintiffs made contributions to their Plan 2 accounts from each paycheck. Comp. ¶ 18. DRS tracked the contributions and accumulated interest in individual accounts. Festor Dec., App. at 51. All contributions were transferred to a state-managed comingled trust fund for investment purposes. *Id.* at 1, 57.

Plaintiffs' contributions to Plan 2 accrued interest at a rate specified by DRS. *Id.* at 70. DRS set the rate of interest at 5.5%, compounded quarterly. *Id.* at 65, 67, 70. DRS used the quarter's ending balance to calculate interest. *Id.* at 14, 17, 19. If an account had a zero balance at the end of the quarter, it earned no interest for that quarter. *Id.* at 19.

In 1996, Plaintiffs transferred their contributions from Plan 2 to Plan 3. *See id.* at 97. Plaintiffs disagree with the method DRS used to calculate the interest on funds transferred between the two TRS accounts.

**B.   State Court Suit**

In February 2009, Plaintiffs challenged DRS' method of calculating interest on funds transferred between TRS accounts in state court.[1] *See Probst v. Dep't of Ret. Sys.*

---

[1] The suit was initially brought by Jeffrey Probst, a member of the Public Employees Retirement System, in January 2005. *Probst I*, 167 Wn. App. at 183–84. Plaintiffs continued litigating the suit after Probst reached a settlement with DRS. *Id.* at 184.

1   (*Probst I*), 167 Wn. App. 180, 184 (2012).  The superior court dismissed their claims, and

2   Plaintiffs appealed.  *Id.* at 185.  On appeal, Plaintiffs argued: (1) common law required

3   DRS to pay daily interest on the funds transferred between Plan 2 and Plan 3; (2) DRS'

4   failure to pay daily interest was arbitrary and capricious; and (3) DRS' failure to pay

5   daily interest constituted an unconstitutional taking.  *Id.* at 182.

6          In March 2012, the Washington Court of Appeals reviewed DRS' method of

7   calculating interest under Washington's Administrative Procedure Act ("APA"), and

8   reversed and remanded the case.  *Id.* at 186, 194.  Although the court determined "DRS

9   had authority to decide how to calculate interest," the court held that DRS' method of

10  calculating interest "was arbitrary and capricious because the agency did not render a

11  decision after due consideration."  *Id.* at 183.  The court also determined "the TRS

12  statutes do not require the DRS to [pay] daily interest on balances transferred from Plan 2

13  to Plan 3."  *Id.* at 191.  Finally, the court declined to address Plaintiffs' takings claim

14  because the court was able to decide the case under the APA.  *Id.* at 183 n.1.

15         On remand, Plaintiffs argued judgment should be entered in their favor.  *Probst v.*

16  *Dep't of Ret. Sys.* (*Probst II*), 185 Wn. App. 1015, 2014 WL 7462567, at *2 (2014).  The

17  superior court disagreed, and remanded the case to DRS for further administrative

18  proceedings.  *Id.*  Plaintiffs appealed.  *Id.*

19         In December 2014, the Washington Court of Appeals held the superior court

20  correctly interpreted *Probst I* by remanding the case to DRS.  *Id.* at *6.  The court also

21  determined that Plaintiffs' takings claim was speculative and premature because DRS had

22

1    not yet adopted a new interest calculation method.  *Id.*  Plaintiffs' case was remanded to

2    DRS for further rulemaking.  *Id.* at *2, *6.  DRS has not issued a new rule.  Comp. ¶ 68.

3    **C.    Present Suit**

4         On June 1, 2015, Plaintiffs filed the instant suit in this Court under 42 U.S.C.

5    § 1983.  *Id.* ¶ 1.  Plaintiffs' sole claim is an alleged violation of the Takings Clause of the

6    Fifth Amendment, as applied to the states by the Fourteenth Amendment.  *Id.* ¶ 75.

7         On August 13, 2015, Frost moved for summary judgment.  Dkt. 14.  On August

8    31, 2015, Plaintiffs responded.  Dkt. 17.  On September 4, 2015, Frost replied.  Dkt. 19.

9    On October 15, 2015, the Court requested additional briefing on ripeness.  Dkt. 22.  On

10   October 30, 2015, the parties filed their opening briefs.  Dkts. 23, 24.  On November 6,

11   2015, the parties filed their responsive briefs.  Dkts. 26, 27.

12                              **II. DISCUSSION**

13        Frost moves for summary judgment, seeking dismissal of Plaintiffs' takings claim

14   on several grounds.  Dkt. 14.

15   **A.    Summary Judgment Standard**

16        Summary judgment is proper only if the pleadings, the discovery and disclosure

17   materials on file, and any affidavits show that there is no genuine issue as to any material

18   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

19   The moving party is entitled to judgment as a matter of law when the nonmoving party

20   fails to make a sufficient showing on an essential element of a claim in the case on which

21   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

22   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**C.     Ripeness**

Frost challenges the ripeness of Plaintiffs' takings claim, arguing DRS has not yet adopted a new interest calculation policy and thus Plaintiffs' claim is not ripe for review. Dkts. 14, 23.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *West Linn Corp. Park L.L.C. v. City of West Linn*, 534 F.3d 1091, 1099 (9th Cir. 2008).

For a federal takings claim to be ripe, "the party bringing the challenge must overcome two prudential hurdles." *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1146 (9th Cir. 2010). The Supreme Court articulated these two requirements in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). First, the plaintiff must demonstrate "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. Second, the plaintiff must "seek compensation through the procedures the State has provided for doing so." *Id.* at 194.

1    Plaintiffs argue they do not need to exhaust state remedies in this case. Dkt. 24.

2  The primary problem, however, is the ongoing administrative proceeding. Under

3  Washington law, DRS has discretion to determine how interest should be calculated on

4  funds transferred between TRS accounts. *See* RCW 41.50.033(1) ("The director shall

5  determine when interest, if provided by a plan, shall be credited to accounts in . . . the

6  teachers' retirement system . . . . The amounts to be credited and the methods of doing so

7  shall be at the director's discretion . . . ."); *see also Probst I*, 167 Wn. App. at 188–89. In

8  *Probst I*, the Washington Court of Appeals held that DRS' calculation method was

9  arbitrary and capricious. 167 Wn. App. at 183. In *Probst II*, the court remanded

10  Plaintiffs' suit to DRS for further rulemaking. 2014 WL 7462567, at *2, *6. DRS has

11  not yet reached a final decision as to how interest will be calculated on funds transferred

12  between TRS accounts, and the agency's definitive position on the matter is unknown at

13  this time. The outcome of DRS' rulemaking process could very well impact Plaintiffs'

14  federal takings claim, but the nature and extent of any such impact is unclear. In the

15  absence of a final decision from DRS, a decision from this Court would be an advisory

16  opinion. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("The federal courts

17  established pursuant to Article III of the Constitution do not render advisory opinions.").

18    The Court is sympathetic to the fact that Plaintiffs have been litigating this issue

19  for many years. Despite the length of this litigation, Plaintiffs' federal takings claim is

20  not yet ripe for review. The Court therefore grants Frost's motion as to ripeness, and

21  dismisses this case without prejudice.

22

**III. ORDER**

Therefore, it is hereby **ORDERED** that Frost's motion for summary judgment (Dkt. 14) is **GRANTED** with respect to ripeness and **DENIED as moot** with respect to the remaining arguments.  Plaintiffs' complaint is **DISMISSED without prejudice** for lack of jurisdiction.

Dated this 22nd day of December, 2015.


_____
BENJAMIN H. SETTLE
United States District Judge