UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICKEY FOWLER, LESIA MAURER, and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TRACY GUERIN, Director of the Washington State Department of Retirement Systems,<br><br>Defendant. | CASE NO. C15-5367 BHS<br><br>ORDER ON PLAINTIFFS' MOTION FOR INJUNCTION, PLAINITFFS' MOTION TO CLARIFY OR MODIFY CLASS DEFINITION, AND DEFENDANT'S MOTION FOR LEAVE TO AMEND |

This matter comes before the Court on Plaintiffs Mickey Fowler, Lesia Maurer, and a class of similarly situated individuals' motion for permanent injunction striking the Director's 2018 Rule, Dkt. 68, Plaintiffs' motion to clarify or modify class definition, Dkt. 70, and Defendant Tracy Guerin, Director of the Washington State Department of Retirement Systems' motion for leave to amend answer, Dkt. 78. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows.

ORDER - 1

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs are public school teachers who participate in Washington's Teachers' Retirement System ("TRS"), a public retirement system managed by the Washington State Department of Retirement Services ("DRS"). Dkt. 18-1 at 20–21. The TRS is comprised of three separate retirement plans: Plan 1, Plan 2, and Plan 3. *Id.* at 21. Plaintiffs are current members of Plan 3 and former members of Plan 2. *See* Dkt. 1, ¶ 18; Dkt. 18-1 at 48. As members of Plan 2, Plaintiffs made contributions to their Plan 2 accounts from each paycheck. Dkt. 1, ¶ 18. DRS tracked the contributions and accumulated interest in individual accounts. Dkt. 18-1 at 2. All contributions were transferred to a state-managed comingled trust fund for investment purposes. Dkt. 18 at 4; Dkt. 18-1 at 8.

Plaintiffs' contributions to Plan 2 accrued interest at a rate specified by DRS— 5.5%, compounded quarterly. Dkt. 18-1 at 16, 18, 21. DRS used the quarter's ending balance to calculate interest. Dkt. 18 at 17, 20, 22. If an account had a zero balance at the end of the quarter, it earned no interest for that quarter. *Id.* at 22. In 1996, Plaintiffs transferred their contributions from Plan 2 to Plan 3. *See* Dkt. 18-1 at 48. Plaintiffs take issue with the method used to calculate the interest on funds transferred between the two plans.

In February 2009, Plaintiffs challenged DRS's method of calculating interest on funds transferred between TRS accounts in state court, continuing litigation initiated in 2005 by another plaintiff who settled with DRS. *See Probst v. Dep't of Ret. Sys.*, 167 Wn. App. 180, 183–84 (2012) ("*Probst I*"). The Superior Court dismissed their claims and

1  Plaintiffs appealed, arguing that (1) common law required DRS to pay daily interest on
2  the funds transferred between Plan 2 and Plan 3; (2) DRS's failure to pay daily interest
3  was arbitrary and capricious; and (3) DRS's failure to pay daily interest constituted an
4  unconstitutional taking. *Id*. at 182.

5  In March 2012, the Washington Court of Appeals reviewed DRS's method of
6  calculating interest under Washington's Administrative Procedure Act ("APA") and
7  reversed and remanded the case. *Id.* at 186, 194. Although the court determined "DRS
8  had authority to decide how to calculate interest," the court held that DRS's method of
9  calculating interest "was arbitrary and capricious because the agency did not render a
10 decision after due consideration." *Id.* at 183. The court also determined "the TRS statutes
11 do not require the DRS to [pay] daily interest on balances transferred from Plan 2 to Plan
12 3." *Id.* at 191. Finally, the court declined to address Plaintiffs' takings claim because the
13 court was able to decide the case under the APA. *Id.* at 183 n.1 (citing *Cmty. Telecable of*
14 *Seattle, Inc. v. City of Seattle, Dep't of Exec. Admin.*, 164 Wn. 2d 35, 41 (2008) (doctrine
15 of constitutional avoidance)).

16 On remand, Plaintiffs argued judgment should be entered in their favor. *Probst v.*
17 *Dep't of Ret. Sys.*, 185 Wn. App. 1015, 2014 WL 7462567, at *2 (2014) ("*Probst II*").
18 The Superior Court disagreed and remanded the case to DRS for further administrative
19 proceedings. *Id.* Plaintiffs appealed. *Id.*

20 In December 2014, the Washington Court of Appeals held the Superior Court
21 correctly interpreted *Probst I* by remanding the case to DRS. *Id.* at *6. The court also
22 determined that Plaintiffs' takings claim was speculative and premature because DRS had

not yet adopted a new interest calculation method. *Id.*[1] Plaintiffs' case was remanded to DRS for further rulemaking. *Id.* at *2, *6.

On June 15, 2015, Plaintiffs sued the Director in this Court, asserting 42 U.S.C. § 1983 claims for violation of their Fifth Amendment rights. Dkt. 1.[2] They claimed the method DRS used to calculate the interest on funds transferred between two plans within TRS deprived them of their property, in violation of the Takings Clause of the Fifth Amendment. *Id*.

On August 13, 2015, the Director moved for summary judgment, seeking dismissal of the complaint as: (1) barred by the Eleventh Amendment; (2) barred by the *Rooker-Feldman* doctrine; (3) barred by issue or claim preclusion; (4) not ripe for review; and (5) meritless as a takings claim because Plaintiffs were not entitled to daily interest. Dkt. 14. On December 22, 2015, the Court granted the motion, concluding that the takings claim was not ripe. Dkt. 28. Plaintiffs appealed to the Ninth Circuit. Dkt. 30. On April 15, 2018, prior to oral argument before the Ninth Circuit, the Director issued WAC 415-02-150, reaffirming the prior interest calculation method. On August 16, 2018, the Ninth Circuit reversed and remanded. Dkt. 32.

On remand, Plaintiffs moved for class certification, Dkt. 43, and the Court certified a class consisting of: "[a]ll active and retired TRS members who: (1) were

---

[1] The Court of Appeals described the claim as pursuant to the Takings Clause of the Fifth Amendment. *Id*. at *6.

[2] In 2016, Tracy Guerin succeeded Marcie Frost as the Director of DRS, becoming the named defendant. Dkt. 52.

previously members of TRS Plan 2 and (2) transferred from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002," Dkt. 58.[3]

The Director sought panel rehearing and rehearing en banc, which the Circuit denied. Dkts. 39, 40; *Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018), *reh'g and reh'g en banc denied*, 918 F.3d 644 (2019). The Director then petitioned for certiorari, which the Supreme Court denied. Dkt. 60.

## II.  DISCUSSION

**A.     Motion to Amend or Clarify Class Definition**

Plaintiffs inform the Court that the Director has communicated a revised understanding of the class definition which excludes 3,112 of the 26,862 teachers Plaintiffs believe to be in the class. Dkt. 70 at 3.

Plaintiffs request that the Court clarify that these teachers are included in the class definition or modify the class definition to state "the class is defined to include all teachers who transferred from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002." Dkt. 70 at 16; Dkt. 77 at 3. The Director responds that, in the parties' data exchanges, she has excluded data relative to "inactive" teachers because the class definition includes only "active and retired" teachers and she "could not agree to disclose personal information

---

[3] In response to the Court's request for supplemental briefing on the motion for class certification, the Plaintiffs proposed a class definition encompassing "[a]ll Teachers Retirement System (TRS) members who transferred into TRS Plan 3 from the commencement of TRS Plan 3 (January 1, 1996) to the date of final judgment in this action, except for those members whose claims were settled in Superior Court in *Probst v. Dept. of Retirement Systems* (January 20, 2002 to December 14, 2007)," arguing this definition was necessary "whether the certification is for proposed injunctive relief or limited to declaratory relief." Dkt. 54 at 7. The Court ruled that amendments to the class definition would need to be made by fully briefed motion. Dkt. 58 at 9.

regarding teachers outside the class definition." Dkt. 76 at 3. However, the Director does not oppose modifying the class definition or providing the relevant data following the modification. *Id*. The Director proposes using "all persons" rather than "all active and retired TRS members" and using "during the class period (January 1, 1996 to January 20, 2002)" rather than "prior to January 20, 2002" to avoid any ambiguity. *Id*. at 1. The Director "does not generally object to the relief requested," but disagrees with premises for the relief set out in Plaintiffs' motion and lists the disagreements. Dkt. 76. In reply, Plaintiffs reiterate their requested language and deny that they mischaracterize the prior proceedings. Dkt. 77 at 3.

The Court takes the Director at her word that she does not object to modifying the class definition. The Court understands the parties' dispute about the prior proceedings to be part of their broader dispute about the scope of the Ninth Circuit's mandate rather than critical to deciding Plaintiffs' motion to clarify or modify the class definition.

As it appears that the Director's proposed phrase identifying participants is broader than Plaintiffs', the Court understands the parties to be in agreement about the narrower phrase. The Director also suggests using "during the class period (January 1, 1996 to January 20, 2002)," but does not explain why this modification is necessary, and Plaintiffs' proposed phrase "prior to January 20, 2002" is consistent with the definition the Court previously approved. Therefore, the Plaintiffs' motion is granted and the class definition is modified to: "[a]ll teachers who transferred from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002."

**B.     Motion for Injunction and Motion to Amend**

Plaintiffs move for an injunction striking the Director's new rule governing interest calculation. Dkt. 68. The Director moves for leave to amend her complaint to add a statute of limitations defense. Dkt. 78. Both motions contest the scope of the Ninth Circuit's mandate. The Court will first address the Director's motion to amend before turning to Plaintiffs' motion for injunction.

"On remand, a trial court can only consider 'any issue not expressly or impliedly disposed of on appeal.'" *Vizcaino v. U.S. District Court*, 173 F.3d 713, 719 (9th Cir. 1999) (quoting *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1997)) (additional citation omitted). "District courts 'must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Id.* (quoting *Delgrosso v. Spang & Co.*, 903 F.2d 234, 240 (3d Cir. 1990)) (internal quotation and citation omitted).

The Ninth Circuit reversed this Court's summary judgment in the Director's favor on ripeness grounds, holding that Plaintiffs' claim was for a *per se* taking to which the prudential ripeness test for regulatory takings does not apply. *Fowler*, 899 F.3d at 1118. It held that the right to daily interest is a property interest "protected by the Takings Clause regardless of whether a state legislature purports to authorize a state officer to abrogate the common law" and concluded that Plaintiffs state a claim for violation of this right. *Id.* at 1118–19. It considered and rejected the additional grounds for summary judgment the Director raised below, and remanded "for the district court to reconsider class

certification and, if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief." *Id*. at 1120–21.

### 1. Motion to Amend

#### a. Standard

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Cap.,* 316 F.3d at 1052.

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

#### b. Analysis

The Director seeks leave to amend her answer to raise the statute of limitations as an affirmative defense, arguing that the Court has not set a post-appeal case schedule and

all of the Rule 15(a) factors weigh in favor of amendment. Dkt. 78 at 5. Plaintiffs argue the motion to amend should be denied because (1) the state court already decided the statute of limitations defense against the Director; (2) amending the pleadings exceeds the scope of the Ninth Circuit's mandate; and (3) a statute of limitations defense is barred by judicial estoppel. Dkt. 80 at 3. While the Director argues Plaintiffs' failure to address the Rule 15(a) factors is an admission that the rule has merit, Dkt. 82 at 2, the Court understands Plaintiffs to argue that amendment is futile.

Plaintiffs argue that in the state court proceedings, there was a ruling on the statute of limitations that represents the law of the case. Dkt. 80 at 5. "[T]he law of the case doctrine applies when a federal court reviews matters previously considered in state court involving the same parties." *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989). In her reply, the Director argues that the relevant state court decision addressed Plaintiffs' breach of contract claim, not their takings claim, and even if it did apply to the takings claim, it did not toll the statute of limitations for Plaintiffs' federal suit. Dkt. 82 at 2–3. The Director also argues that, while RCW 4.16.170 provides that the filing of a complaint tolls the statute of limitations, tolling does not carry over to subsequently-filed actions. *See* Dkt. 82 at 2–3 & 3 n.3 (citing, among others, *Dowell Co. v. Gagnon*, 36 Wn. App. 775 (1984); *Blatt v. Deede*, 135 Fed. App'x 968 (9th Cir. 2005)). Therefore, even though the Director conceded the state court's ruling in her Answer in this case, it is not clear that concession referred to the question at issue here. Relatedly, it appears that a ruling that Plaintiffs' claim was timely in the state court proceedings would not establish that it was timely in this Court. *Dowell*, 26 Wn. App. at 776 (citing *Fox v. Groff*, 16 Wn.

App. 893, 895 (1984) (the complaint that tolls a statute of limitations is the one filed in the action before the court, not one independently filed)).

Plaintiffs also reference in a footnote that in settling the claims of some plaintiffs in *Probst*, the parties agreed that "for the purposes of asserting a statute of limitations defense against [Plaintiffs], [the Director] shall not count the period beginning on the date the Class Action was filed and ending on the Effective Date of this Settlement Agreement." Dkt. 80 at 6 n.5 (citing Dkt. 18-1 at 35). However, Plaintiffs do not clearly establish how that agreement applies to this subsequently-filed action. The Court concludes that, at a minimum, Plaintiffs do not establish that amendment would be futile based on the law of the case and instead raise arguments which are more appropriate to a fully-briefed motion to dismiss or for summary judgment. An affirmative motion by Plaintiffs would also allow them to address the Director's arguments first raised in reply.

Next, Plaintiffs argue the Ninth Circuit's mandate does not permit consideration of new defenses. Dkt. 80 at 7. They argue that as the remand was issued with specific instructions, amendment to assert new affirmative defenses is outside the scope of remand. *Id*. at 8. Plaintiffs cite authority including *Planned Parenthood v. American Coalition of Life Activists*, 422 F.3d 949, 966–67 (9th Cir. 2005), where the Ninth Circuit "finally adjudicated all issues except for, and remanded only for consideration of" a specific issue, "the constitutional implications of the punitive damages awards." *Id*. Plaintiffs argue that new affirmative defenses are similarly outside the scope of remand in this case, which was to reconsider class certification and "if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief." Dkt.

80 at 8 (citing *Fowler*, 899 F.3d at 1120–21). However, unlike *Planned Parenthood*, the mandate in this case does not limit the substantive issues the Court should consider in evaluating the funds transfer injunction. Also unlike *Planned Parenthood*, this case has not proceeded through trial to judgment.

The Director counters that as the Ninth Circuit did not fully resolve the merits, consideration of additional defenses is not foreclosed by the mandate. Dkt. 82 at 4 (citing *United States v. Kellington*, 217 F.3d 1084, 1092–93 (9th Cir. 2000)). Specifically, the Director argues that the Ninth Circuit "did not grant summary judgment to Plaintiff[s], did not decide all aspects of the § 1983 claim, did not resolve issues of just compensation, and did not address the statute of limitations defense." *Id*. at 5. Therefore, she argues the mandate does not preclude amendment. *Id*. at 6 (quoting *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986) ("Absent a mandate explicitly or impliedly precluding amendment, the decision whether to allow leave to amend is within the trial court's discretion.")).

The scope of the mandate is a close question considering that the Circuit resolved the alternate bases for summary judgment "given the many years this case has been held up in the courts." *Fowler*, 899 F.3d at 1118; *see also Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 657 F.3d 865, 867 (9th Cir. 2011) (open remand is inappropriate when after fifteen years of litigation, agency "continues to be unable to form a reasoned analysis in support of its ruling"). The Circuit's comment expresses an interest in prompt resolution of this matter. While the decision clearly concludes Plaintiffs state a *per se* takings claim, the Circuit instructed the Court to decide "if the class shall be given the requested

injunctive relief," *Fowler*, 899 F.3d at 1121, rather than instructing the Court to enter the requested injunctive relief or enter it after deciding its scope.

As the Circuit explained, "[a] *per se* taking triggers a 'categorical duty to compensate the former owner' under the Takings Clause." *Id.* at 1117 (quoting *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003)). However, even if property was taken, "the Fifth Amendment only protects against a taking without just compensation." *Brown*, 538 U.S. at 240 (quoting *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 861–62 (9th Cir. 2001)). Plaintiffs are correct that in *Eastern Enterprises v. Apfel*, 524 U.S. 498, 521 (1998), the Supreme Court reasoned that a claim for compensation is "pointless" when the government has directly taken money. However, it is at least possible for the compensation due to the plaintiff for a *per se* taking to be zero resulting in no constitutional violation, as occurred in *Brown*, 538 U.S. at 240. ("Because that compensation is measured by the owner's pecuniary loss—which is zero . . . —there has been no violation of the Just Compensation Clause of the Fifth Amendment in this case.").

Though the Ninth Circuit emphasized that the relief Plaintiffs seeks is prospective injunctive relief, *Fowler*, 899 F.3d at 1120 (citing *Taylor v. Westly*, 402 F.3d 924, 935–36 (9th Cir. 2005)), Plaintiffs still must establish both elements of the constitutional violation. While the prior proceedings do not suggest the Plaintiffs' pecuniary loss is zero, the Court agrees with the Director that the instructions on remand indicate that the second element of Plaintiffs' claim was not resolved. Recognizing the existence of a right to daily interest is not equivalent to deciding that relief is appropriate in this case and

should be awarded to Plaintiffs. Therefore, the Court agrees with the Director that the merits are not fully resolved and that the mandate does not impliedly preclude amendment. As addressed in more detail in the following discussion of judicial estoppel, the Court concludes it is permissible for a party to assert a new defense in response to a newly-recognized theory of liability.

Finally, Plaintiffs argue amendment is barred by judicial estoppel. The Director counters that Plaintiffs have not established any of the factors pertinent to a judicial estoppel argument. The parties agree that *New Hampshire v. Maine* states the test for judicial estoppel, whether: (1) the party's position is clearly inconsistent with its earlier position, (2) whether there is a risk that judicial acceptance of a position would create the perception that either the earlier or later court was misled, and (3) whether the inconsistent position would create an unfair advantage or impose an unfair detriment on the opposing party. 532 U.S. 742, 750 (2001).

Plaintiffs argue that the Director's position in state court and in this Court that their claims were unripe is clearly inconsistent with a statute of limitations defense and that applying the statute of limitations would prejudice them as the Director "has successfully delayed resolution of their claim for many years by having the Washington Superior Court, the Washington Court of Appeals, and this Court accept her position that the teachers' claim was premature." Dkt. 80 at 12–13. As noted, the Ninth Circuit was the first court in this litigation to hold that a *per se* taking was at issue, to which the prudential ripeness test does not apply. *Fowler*, 899 F.3d at 1118.

1        Permitting the Director to raise a defense based on this new framing of the right at

2    issue does not create an impression that lower courts were misled or adversely affect the

3    judicial process. *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). Rather, it

4    recognizes that lower courts including this one agreed with the Director that a regulatory

5    taking, subject to the ripeness doctrine, was at issue. *C.f. Yniguez v. State of Ariz.*, 939

6    F.2d 727, 739 (9th Cir. 1991) (judicial estoppel precludes seeking an outcome directly

7    contrary to the result sought and obtained in the lower court). Similarly, while Plaintiffs

8    argue they have suffered prejudice "because the Director has successfully delayed

9    resolution of their claim for many years" by arguing Plaintiffs' claim was premature, a

10   party does not prejudice the other by advancing a non-frivolous legal position and

11   exploring other available positions when faced with a new legal holding. Therefore, the

12   Court concludes that amendment is not barred by judicial estoppel.

13       Considering the extreme liberality favoring amendment, the lack of definitive

14   futility, and the Court's disagreement with Plaintiff's characterization of unfair prejudice,

15   despite the Court's continued sympathy for Plaintiffs over the extensive duration of this

16   litigation, the Director's Motion for Leave to Amend her Answer is granted.

17       **2.    Motion for Injunction**

18       Plaintiffs move for an injunction striking WAC 415-02-150 but retaining the

19   interest rate set by the Director—5.5% annual interest compounded quarterly. Dkts. 68,

20   68-1. The rule, issued in 2018, affirms the interest calculation method under which

21   Plaintiffs' claims arose and applies retroactively to November 3, 1977. WAC 415-02-

22   150(5) ("Your individual account does not 'earn' or accrue regular interest on a day by

1  day basis."); WAC 415-02-150(7). In addition to the teachers' retirement system, it

2  retroactively governs the public employees' retirement system, the law enforcement

3  officers' and firefighters' retirement system, the school employees' retirement system,

4  and the public safety employees' retirement system, and prospectively governs Plan 1

5  and Plan 2 of the Washington state patrol retirement system. WAC 415-02-150(7).

6        Plaintiffs explain that the injunction striking the rule is "in addition to and separate

7  from" an injunction directing a funds transfer to return interest taken. Dkt. 68 at 3 (citing

8  *Fowler*, 899 F.3d at 1120). Plaintiffs note that the parties are working to compile the data

9  needed for the funds transfer injunction and explain that they will file a motion if the

10  parties cannot agree on the formula. *Id*. The request for an injunction directing a funds

11  transfer is described in Plaintiffs' complaint and was part of the record before the Ninth

12  Circuit; the injunction striking the rule is not in the complaint and was not before the

13  Circuit.

14        Plaintiffs argue that the Director's new rule is facially unconstitutional under the

15  Ninth Circuit's decision in *Fowler*. Therefore, Plaintiffs argue that the Court may use its

16  broad equitable power to enjoin unconstitutional laws to enjoin the rule. Dkt. 68 at 6–7

17  (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015); *Whole*

18  *Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016)). "It is true enough that we

19  have long held that federal courts may in some circumstances grant injunctive relief

20  against state officers who are violating, or planning to violate, federal law." *Armstrong*,

21  575 U.S. 320, 326–27 (citations omitted). In *Whole Woman's Health*, considering the

22  court of appeals' conclusion that granting facial relief was improper because the plaintiffs

only brought an as-applied challenge, the Supreme Court relied on the petitioners' request for "such other and further relief as the Court may deem just, proper, and equitable" to uphold the District Court's facial invalidation of the challenged provision. 136 S. Ct. at 2307. The Supreme Court cited Fed. R. Civ. P. 54(c)'s instruction that "a final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," as well as its instruction in *Citizens United v. Federal Election Commission*, 558 U.S. 310, 333 (2010), that judicial responsibility may require considering facial validity even in the absence of a facial challenge. *Id*

Plaintiffs argue that the Director acknowledged in her petitions for rehearing and for rehearing en banc in the Ninth Circuit and for certiorari that the Circuit's mandate requires her to provide daily interest. Dkt. 68 at 12. They argue that any argument to the contrary represents the Director's attempt to relitigate issues either expressly or impliedly disposed of on appeal. *Id*. (citing *Vizcaino*, 173 F.3d at 719). They argue that, as Plaintiffs have a right to daily interest and the rule denies daily interest, the Court should enjoin it and separately address the accounting and remedy for the previous denial of daily interest. Dkt. 68 at 13.

The Director opposes the injunction striking the rule on four bases: (1) that Plaintiffs did not challenge WAC 415-02-150 in their complaint, (2) that Plaintiffs lack standing to seek an injunction, (3) that Plaintiffs have failed to establish irreparable injury or inadequate remedies at law, and (4) that Plaintiffs have not yet proven their takings claim under 42 U.S.C. § 1983.

1     First, the Court does not find the Director's unpled claims theory persuasive. The new rule did not alter the prior interest calculation practice and was the subject of supplemental briefing before the Ninth Circuit. The Director cannot now reasonably argue she lacked notice that the new rule was part of this case. *C.f. Easton v. Asplundh Tree Experts, Co.*, C16-1694-RSM, 2017 WL 5483769, at *3 (W.D. Wash. Nov. 15, 2017) (requirement to plead a short and plain statement of the claim ensures defendant has notice of claims so it may effectively defend itself).

    Second, the Director argues no member of the class has standing to seek prospective injunctive relief regarding the new rule because no member is still in TRS Plan 1 or 2. Dkt. 73 at 7. Prospective injunctive relief requires a showing that the plaintiff suffered or faces a concrete and particularized harm, coupled with "'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing and quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). The Director argues that as the class definition is limited to members of Plan 2 who transferred to Plan 3 prior to January 20, 2002, "by definition the named Plaintiff and the class were removed from Plan 2 at least 18 years ago and were never members of TRS Plan 1." Dkt. 73 at 8–9. The Court agrees with Plaintiffs that this argument is unpersuasive as the rule is retroactive to 1977, thus appearing to govern the ongoing denial of daily interest which Plaintiffs challenge.

    Third, to establish entitlement to a permanent injunction, a plaintiff must show:

1     (1) that it has suffered an irreparable injury; (2) that remedies available at
      law, such as monetary damages, are inadequate to compensate for that
2     injury; (3) that considering the balance of hardships between the plaintiff
      and defendant, a remedy in equity is warranted; and (4) that the public
3     interest would not be disserved by a permanent injunction.

4  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Regarding the second

5  factor, the Ninth Circuit clearly contemplated that prospective injunctive relief in the

6  form of an accounting and funds transfer, a remedy in equity, *could* be appropriate in this

7  case. *Fowler*, 899 F.3d at 1119–20. Regarding the fourth factor, the Director argues that

8  if the rule is enjoined, there would be no rules in place governing regular interest, which

9  would adversely impact individuals who are still members of TRS Plans 1 and 2,

10 including individuals remaining in Plan 2 who are not before the Court. Dkt. 73 at 9.

11 Plaintiffs assert that striking the rule will retain "the Director's regular rate, 5.5% interest

12 compounded quarterly," "adopted without a rule under RCW 41.37.010(38) in 1977" and

13 will obviate "[o]nly the basis for denying the required daily interest." Dkt. 75 at 7. The

14 Court concludes the basis for the injunction is insufficiently established at this time to

15 compel the exercise of its broad equitable power for two reasons.

16     First, as the "regular" rate adopted without a rule is the rate the Washington Court

17 of Appeals decided was adopted arbitrarily and capriciously, *Probst II*, 185 Wn. App. at

18 *4 (quoting *Probst I*, 167 Wn. App. at 193), it is not clear that rate would be revived with

19 the addition of daily interest simply by striking the new rule.[4] Second, the Court finds it

20 imprudent to decide any potential exercise of broad equitable power before Plaintiffs'

---

[4] The Court would welcome briefing on the severability or survivability of the interest rate in future motion practice on a permanent injunction.

entitlement to specific relief is adjudicated. Relevant to both the permanent injunction standard and the Director's argument that Plaintiffs have not proven their claim, the Court disagrees with Plaintiffs' apparent position that the funds transfer injunction is a foregone conclusion. Resolving the specific relief will inform the inquiry into the facial validity of the rule and any appropriate relief. In other words, whether and in what form an injunction for an accounting and funds transfer should issue may inform inquiry into the irreparable nature of the injury, the balance of hardships, and the public interest relevant to a potential injunction striking the rule. Therefore, Plaintiffs' motion for injunction is denied without prejudice.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion for permanent injunction, Dkt. 68, is **DENIED without prejudice**, Plaintiffs' motion to clarify or modify class definition, Dkt. 70, is **GRANTED** as stated herein, and the Director's motion for leave to amend answer, Dkt. 78, is **GRANTED**.

Dated this 22nd day of January, 2021.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge