UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICKEY FOWLER, LESIA MAURER, and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TRACY GUERIN, Director of the Washington State Department of Retirement Systems,<br><br>Defendant. | CASE NO. C15-5367 BHS<br><br>ORDER NOTIFYING PARTIES OF INTENT TO CERTIFY QUESTIONS |

There are six motions pending before the Court in this long-running dispute: (1) Plaintiffs Mickey Fowler, Leisa Maurer, and a class of similarly situated individuals' Motion for Partial Summary Judgment on the Fact of Loss, Dkt. 90, (2) Defendant Tracy Guerin, Director of the Washington State Department of Retirement Systems' ("DRS") Motion for Summary Judgment, Dkt. 98, (3) Plaintiffs' Motion for Summary Judgment on DRS's Affirmative Defenses, Dkt. 103, (4) Plaintiffs' Motion to Exclude Expert Testimony, Dkt. 110, (5) Plaintiffs' Motion to Approve Formula to Correct Class Members' Accounts, Dkt. 111, and (6) DRS's Motion to Exclude/Strike All Expert

ORDER - 1

Testimony Not Disclosed, Dkt. 144. The Court has considered the motions, the briefing, and and the remainder of the file and hereby rules as follows.

## I. BACKGROUND

As the parties are familiar with the history of this case, the Court provides the following brief recap:

This case involves a long-running dispute between Plaintiffs, public school teachers who participate in Washington's Teachers' Retirement System ("TRS"), and DRS over DRS's rule allocating interest earned on pension savings. Plaintiffs transferred between TRS Plan 2 and TRS Plan 3 in the late 1990s and contend that they should have been allocated more interest upon transfer, should have gotten a higher "Transfer Payment" based on the additional interest, and have been deprived of earnings on the lost funds ever since.

Plaintiffs first litigated their claims in state court in the mid-2000s, alleging violations of Washington state law and the Washington constitution. Neither their initial nor their amended complaints asserted a Fifth Amendment takings claim under the U.S. Constitution. Plaintiffs had some success in the early 2010s when the Washington State Court of Appeals held that DRS's rule was arbitrary and capricious. However, no relief was forthcoming, as the state courts remanded the rule to DRS for further rulemaking. The state court docket appears to indicate that this case is still proceeding.

Frustrated by the delay, Plaintiffs filed a new suit in this Court in 2015, asserting a 42 U.S.C. § 1983 claim based on the same facts—that the same deprivation of interest violated the U.S. Constitution's Fifth Amendment Takings Clause. After supplemental

briefing on prudential ripeness, this Court concluded the case was prudentially unripe and granted summary judgment for DRS, dismissing the case without prejudice for lack of jurisdiction. Plaintiffs appealed.

In 2018, just before oral argument in the Ninth Circuit, DRS issued a new rule retroactively affirming its practice. After supplemental briefing on the new rule, the Ninth Circuit concluded that Plaintiffs stated a claim for violation of the federal Takings Clause. It remanded for further proceedings. DRS now asserts an affirmative statute of limitations defense and contends that Plaintiffs have not proven their takings claim. Plaintiffs counter that their claim is not time-barred, contend that they have proven a taking, and seek an injunction transferring the lost interest and subsequent earnings.

## II.  DISCUSSION

There are two major issues remaining in this case.

The first is whether Plaintiffs have proven a Fifth Amendment takings claim. The Court concludes that they have.

The second is whether the statute of limitations bars Plaintiffs' claim. The Court concludes that Plaintiffs' only viable theory to avoid this bar is equitable tolling. Washington law on equitable tolling in civil cases is unclear. The Court thus proposes seeking the assistance of the Washington Supreme Court through a certified question and will consider the parties' perspectives on its proposal.

The Court reserves ruling on issues related to an injunction to correct class members' accounts until the limitations period is resolved.

### A. Plaintiffs Have Established a Federal Takings Claim

The Ninth Circuit was the first court in this lengthy dispute to determine that Plaintiffs stated a claim for a *per se* Fifth Amendment taking. *Fowler v. Guerin*, 899 F.3d 1112, 1117–18 (9th Cir. 2018) ("We now clarify that the core property right recognized in *Schneider* [*v. Calif. Dep't of Corrections*, 151 F.3d 1194 (9th Cir. 1998)] covers interest earned daily, even if payable less frequently."). A *per se* taking "triggers a 'categorical duty to compensate the former owner' under the Takings Clause." *Id.* (quoting *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003)).

After remand, Plaintiffs moved for an injunction striking DRS's 2018 rule retroactively affirming its interest calculation practice. This Court denied the motion without prejudice. Dkt. 85. A *per se* taking in effect has two elements: (1) that property was taken and (2) without just compensation. *Id.* at 12 (citing and quoting *Brown*, 538 U.S. at 240). Just compensation is measured by the owner's pecuniary loss. *Brown*, 538 U.S. at 240. If the pecuniary loss is zero, there is no violation of the Just Compensation Clause and no constitutional violation. *Id.* (no pecuniary loss because interest lost was less than reasonable administrative cost of returning it). Because no court had ruled on Plaintiffs' pecuniary loss in the context of a *per se* taking, the Court concluded that an injunction striking the rule was premature without that determination. Dkt. 85 at 19.

In this case, it is undisputed that DRS did not pay daily interest. *See, e.g.*, WAC 415-02-150(5) ("Your individual account does not 'earn' or accrue regular interest on a day by day basis."); WAC 415-02-150(7) ("This rule applies retroactively to November 3, 1977 . . . ."). Neither was DRS responsible for the cost of administering the retirement

1  system. RCW 41.50.110(1), (2) (state employers required to reimburse DRS "its
2  proportional share of the entire expense of the administration of the retirement system").
3  Unlike *Brown*, and despite DRS's statutory interpretation argument to the contrary, the
4  Court concludes that there is no entry on the opposite side of the ledger zeroing out
5  Plaintiffs' pecuniary loss.

6        DRS contends that Plaintiffs experienced no pecuniary loss because they received
7  Transfer Payments encompassing all funds available at the time Plan 3 was created.
8  Specifically, because Plan 3 had a lower defined benefit, it reduced the State's future
9  obligations. The Office of the State Actuary explained in a memorandum that "[w]hen
10 members transfer from TRS 2 with its 2% formula to TRS 3 with its 1% formula,
11 liabilities are essentially cut in half," so "[a]fter funding the TRS 3 liabilities substantial
12 assets remain." Dkt. 101 at 41. "[M]ost of the remaining assets are then used to pay for
13 the members' accumulated employee contributions," and the remaining assets "will go to
14 the TRS 3 member in the form of the transfer bonus." *Id.*; *see also id.* at 37–39 (Fiscal
15 Note from the Office of the State Actuary explaining Joint Committee on Pension
16 Policy's intent that creation of Plan 3 cause no short-term gain to the state and that the
17 Transfer Payment would function as "a balancing item to develop cost neutrality."). DRS
18 argues that had the Legislature known of its obligation to pay daily interest, it would have
19 simply allocated some of the remaining assets to the TRS 3 member in the form of the
20 daily interest owed and the rest of the remaining assets to the TRS 3 member in the form
21 of a Transfer Payment, resulting in the same net transfer.

22

1    DRS's argument is based on RCW 41.32.840's legislative history. In Washington, courts "discern plain meaning 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *Matter of K.J.B.*, 187 Wn.2d 592, 597 (2017) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11 (2002)). "'[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history.'" *Id*. (quoting *Dep't of Ecology*, 146 Wn.2d at 12). The Court may consider legislative history if legislation is ambiguous but should not allow legislative history to override an unambiguous section of the statute or add "an element not found there." *State v. Alvarez*, 74 Wn. App. 250, 258 (1994) (discussing elements section of penal statute). "If a term is defined in a statute, that definition is used." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813 (1992) (en banc). RCW 41.32.840 provides that those who transfer from Plan 2 to Plan 3 will receive a Transfer Payment in the form of a forty percent increase of their "Plan 2 accumulated contributions" and "[a] further additional payment of twenty-five percent, for a total of sixty-five percent." DRS argues that the statutory term "accumulated contributions" is ambiguous and could be understood to encompass all excess funds. Dkt. 107 at 30–31. Therefore, DRS argues, it is appropriate to consider the Bill Reports and Fiscal Notes to conclude that the Transfer Payment transferred all available funds to Plan 3 members. *Id*. at 30.

While DRS's account of the legislature's intent is entirely plausible, the Court concludes that the statute's plain meaning is not ambiguous, so it is not permitted to

resort to legislative history to construe the statute. *Matter of K.J.B.*, 187 Wn.2d at 597. First, the term "accumulated contributions" is defined. RCW 41.32.010(1)(b) defines it as "the sum of all contributions standing to the credit of a member in the member's individual account . . . together with the regular interest thereon." This definition does not plausibly include all excess funds or include ambiguity on a balancing intent. Second, RCW 41.32.8401(5) characterizes the transfer payment as an "incentive payment," suggesting legislative intent to incentivize transfers from Plan 2 to Plan 3 but lending no textual support to DRS's contention that transferees were allocated all available funds. The Court concludes that the legislative text is not ambiguous and therefore does not consider legislative history or DRS's expert declarations regarding that legislative history.[1] The available evidence in the record demonstrates that though the Legislature created a legal right to very substantial Transfer Payments as an incentive for members who transferred from Plan 2 to Plan 3, the Legislature did not, and DRS did not, allocate the daily interest earned on Plan 2 accounts. DRS's theory to explain a lack of pecuniary loss is not available as a matter of statutory construction, and there is no other basis in the record to conclude that the Fifth Amendment's Just Compensation Clause was not violated. *C.f. Brown*, 538 U.S. at 240 (no violation of the Just Compensation Clause and thus no constitutional violation when pecuniary loss from *per se* taking is zero).

  Therefore, the Court concludes that Plaintiffs have established a pecuniary loss and a complete *per se* takings claim, as a matter of law. Plaintiffs' motion for partial

---

[1] Plaintiffs' Motion to Exclude Expert Testimony, Dkt. 110, is therefore DENIED as moot.

summary judgment on the fact of loss, Dkt. 90, is thus GRANTED, DRS's motion for summary judgment, Dkt. 98, is DENIED as to the issue of net loss, and Plaintiffs' motion for summary judgment, Dkt. 103, is GRANTED in part as to a *per se* takings claim.

In the interests of judicial economy, the Court intends to reserve ruling on Plaintiffs' motion to approve formula to correct class members' accounts, Dkt. 111, and DRS's related motion to exclude/strike all expert testimony not disclosed, Dkt. 144, until resolution of DRS's statute of limitations affirmative defense.

**B.     The Court Intends to Certify a Question on Equitable Tolling**

Plaintiffs advance a number of theories to defeat DRS's statute of limitations defense. The Court concludes that none but equitable tolling are potentially viable.

DRS first asserted a statute of limitations defense in this Court following the Ninth Circuit's recognition of a *per se* takings claim in 2018. Plaintiffs opposed DRS's motion for leave to amend its answer on theories including judicial estoppel, which the Court rejected. Dkt. 85. The Court reasoned that permitting DRS to raise the statute of limitations "based on this new framing of the right at issue does not create an impression that lower courts were misled or adversely affect the judicial process." *Id*. at 14 (citing *Russell v. Rolfs*, 893 F.3d 1033, 1037 (9th Cir. 1990)). And while Plaintiffs argued they suffered prejudice because DRS delayed resolution of their claim for many years by arguing the claim was premature and through a long rulemaking process, the Court concluded that a party does not prejudice the other by advancing a non-frivolous legal position and exploring other available positions when faced with a new legal holding. *Id*.

1    DRS contends that Plaintiffs' takings claim accrued no later than July 31, 2006,
2 when Plaintiffs learned of the deprivation of interest. Therefore, it contends the three-year
3 statute of limitations for a Fifth Amendment takings claim under § 1983 ran in 2009, well
4 before Plaintiffs asserted a Fifth Amendment takings claim in this Court in 2015. *Rose v.*
5 *Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981) (three-year statute of limitations applies to
6 § 1983 claims brought in Washington).

7    Plaintiffs counter that DRS has already litigated the statute of limitations issue in
8 state court (albeit on their state law claims) and lost. They also contend that their claim
9 accrued in 2006 when they learned of the injury, became unripe in 2013 upon state court
10 remand to DRS for rulemaking, and ripened again in 2018 when DRS issued its rule
11 retroactively affirming the injury

12    The threshold issue is the relationship between Plaintiffs' state case and their
13 federal case. Plaintiffs argue on a number of bases that the federal litigation is legally a
14 continuation of the same action. These arguments are not persuasive.

15    Neither DRS's agreement in the parties' Joint Status report, Dkt. 15, to litigate the
16 federal case on the state court record nor the characterizations of Plaintiffs' lawsuits by
17 this Court or the Ninth Circuit as "this litigation" or "this case" make the state court
18 complaint the operative one for statute of limitations purposes.

19    Similarly, the close resemblance of claims does not make the federal court
20 complaint, in effect, relate back to the state court complaint. Plaintiffs argue that DRS
21 improperly characterizes their legal theory as a § 1983 claim when in fact "[t]he claim
22 here, the same as in state court, is that plaintiffs are owed daily interest," and § 1983 is

simply a remedy. Dkt. 103 at 19 n.6 (citing *Chapman v. Houston Welfare Rights*, 441 U.S. 600, 617–19 (1979)). Plaintiffs are only partially correct. While § 1983 "does not protect anyone against anything," *Chapman*, 441 U.S. at 617, that does not mean Plaintiffs asserted the same claim in each suit—instead, they asserted the same injury, and claimed that injury violated the state constitution in state court and the federal Constitution in federal court.

In state court, Plaintiffs' complaint asserted a right to daily interest under the Washington constitution. In this Court, Plaintiffs' complaint asserted a violation of the U.S. Constitution pursuant to 42 U.S.C. § 1983. Washington law on takings claims appears to follow and parallel federal law.[2] However, the claim asserted has important jurisdictional implications—had Plaintiffs raised a federal claim in their state complaint, it would have been subject to removal, and would have potentially reached federal court much earlier. Similarly, had Plaintiffs sought to amend their state court complaint to assert a Fifth Amendment claim based on the same facts, it presumably would have 'related back' to the date of the initial state court complaint. CR 15(c). Instead, Plaintiffs reserved their federal claim and asserted it only after becoming frustrated with the pace of the state court proceedings and remand to DRS. Dkt. 90 at 6.

---

[2] *See Chong Yim v. City of Seattle*, 194 Wn.2d 651, 683 (2019) (for both *per se* and partial regulatory takings, Washington Supreme Court has "always attempted to discern and apply the federal definition of regulatory takings"). While in *Chong Yim* the Washington Supreme Court specifically referenced regulatory takings, their framing of a "*per se* regulatory taking," occurring when regulations cause a permanent physical invasion of property, appears to parallel the federal framing of a *per se* taking involving the physical occupation of property such as in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

1    Plaintiffs are correct that in 2010, the Thurston County Superior Court ruled
2 against DRS on the statute of limitations as to their state law claims filed in that court.
3 Dkt. 107 at 7. It denied DRS's contention that the statute of limitations began to run in
4 the late 1990s at the time of transfer and applied the discovery rule, holding that the
5 statute began to run in 2006 and that Plaintiffs' state law claims were timely.

6    Plaintiffs are not correct that this holding renders their federal claims timely filed
7 or tolls the statute of limitations. The Washington Court of Appeals has held that even in
8 the same jurisdiction, an earlier-filed case does not toll the statute of limitations for a
9 later-filed case. *Dowell Co. v. Gagnon*, 36 Wn. App. 775, 776 (1994); *see also Ramirez*
10 *de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 319–20 (1st Cir. 1978) ("Federal
11 courts have applied to § 1983 suits in particular a rule that prior actions in state courts do
12 not toll the applicable state statute of limitations.") (collecting cases) (cited with approval
13 in *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 240–41 (9th Cir. 1987)).
14 Plaintiffs distinguish *Dowell* on its facts, involving a complaint that was forgotten rather
15 than an action that was vigorously litigated, Dkt. 109 at 21, but that distinction does not
16 advance their claim that a previously-filed state claim tolls the statute of limitations for a
17 later-filed federal claim asserting a different claim for relief based on the same facts.

18    Plaintiffs also advance a theory that absent class members may not have
19 discovered their injury. The Court agrees with DRS that this is immaterial. The named
20 plaintiffs must have a proper basis to proceed in order to represent the class. *See* Dkt. 121
21 at 8. (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.
22 2003)).

Finally, Plaintiffs contend that their injury became ripe twice—once upon discovery in 2006, and again in 2018 when DRS issued its new rule retroactively affirming its practice. This position cannot be reconciled with the Ninth Circuit's decision. The Circuit ruled that this Court was incorrect to conclude Plaintiffs' claims were prudentially unripe. *Fowler*, 899 at 1118. If this Court should have identified a *per se* taking in 2015, when administrative action was still pending, it cannot be that the claim was unripe at that time.

Plaintiffs' argument in opposition to the Director's motion for summary judgment indirectly illustrates this point—they argue that the their takings claim became ripe when the Director issued her 2018 regulation, but "[b]ecause that date was not more than three years before the federal case was filed—indeed, it was *after*—the claim cannot be barred by the statute of limitations." Dkt. 109 at 15 (emphasis added). This argument is consistent with this Court's framing that Plaintiffs' claim was unripe before the new rule issued, a framing the Ninth Circuit rejected. *Compare McMillan v. Goleta Water Dist.*, 792 F.2d 1453, 1457 (9th Cir. 1986) (part of rationale for prudential ripeness doctrine is possibility of administrative processes resulting in mutually acceptable solution) *with Fowler*, 899 F.3d at 1117 ("a physical *appropriation* of property gave rise to a *per se* taking, without regard to other factors" such as the agency's final decision or state procedures for just compensation) (quoting *Brown*, 538 U.S at 233) (emphasis in original). Further, addressing DRS's case for issue preclusion, the Ninth Circuit held that the Washington Court of Appeals had not addressed the issue before the Circuit—"[The Washington Court of Appeals] found premature only the Teachers' speculation that the

forthcoming DRS rulemaking would effect a taking, not their argument here that DRS effected a taking by retaining some of their earned interest years ago." *Fowler*, 899 F.3d at 1119 (citing *Probst v. Dep't of Retirement Sys.*, No. 45128-0-II, 2014 WL 7462567, at *2, *6 (Wn. App. Dec. 30, 2014)).

This leaves equitable tolling. Section 1983 contains no statute of limitations. Federal (and state, for that matter) courts instead "borrow "§ 1983 limitations periods from analogous state law. Specifically, they borrow the state's "general or residual statute for personal injury actions." *Owens v Okure*, 488 U.S. 235. 250 (1989). In Washington, that statute is RCW 4.16.080(2), which is a three-year limitations period. *Bagley v CMC Realty Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Therefore, in this District, the limitations period for a §1983 claim is three years. As Plaintiffs' claim accrued in 2006, the limitations period expired in 2009, well before they filed their Fifth Amendment claim in this Court in 2015.

"For actions under 42 U.S.C. § 1983, courts apply . . . the forum state's law regarding tolling, including equitable tolling, except to the extent [it] is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler*, 193 F.3d 911, 914 (9th Cir. 1999)). The Washington Supreme Court "allows equitable tolling when justice requires." *Millay v. Cam*, 135 Wn.2d 193, 206 (1998) (en banc) (citing *Finkelstein v. Security Properties, Inc.*, 76 Wn. App. 733, 739–40 (1995)). Traditionally, "[t]he predicates for equitable tolling are bad faith, deception, or false assurances by the defendant, and the exercise of diligence by the plaintiff." *Id*. (citing *Finkelstein*, 76 Wn. App. at 739–40). "In Washington equitable tolling is appropriate

1 when consistent with both the purpose of the statute providing the cause of action and the
2 purpose of the statute of limitations." *Id*. (citing *Douchette v. Bethel Sch. Dist. No. 403*,
3 117 Wn.2d 805, 812 (1991)).

4     At least in the habeas or criminal context, the Washington Supreme Court has
5 expressly recognized that equitable tolling is not confined to the traditional predicates on
6 the part of the defendant. *In re Pers. Restraint of Carter*, 172 Wn.2d 917, 929 (2011).
7 Previously, in *In re Bonds*, a four-justice plurality of the Washington Supreme Court
8 refused to apply equitable tolling when the plaintiff alleged the court's delay in reviewing
9 his petition made a public trial issue undiscoverable until after the limitations period had
10 run, citing the traditional predicates "in the civil context" which had been extended to
11 criminal cases. *In re Bonds*, 165 Wn.2d 135, 144 (2008) (en banc) (citing *Millay*, 125
12 Wn.2d at 206). The three-justice concurrence agreed with the result but wrote separately
13 to disagree with the "conclusion that the remedy of equitable tolling is available in
14 *criminal cases* only when bad faith, deception, or false assurances caused the petitioner's
15 late filing." *Id*. at 144–45 (Alexander, C.J., concurring) (emphasis added). The two-
16 justice dissent emphasized that equitable tolling has been recognized when the plaintiff's
17 ability to meet the statute were impacted by court error. *Id*. at 146–47 (Sanders, J.,
18 dissenting) ("When a court makes a mistake, equity is required to remedy it.") (citing
19 *State v. Littlefair*, 112 Wash. App. 749, 762 (2002); *In re Pers. Restraint of Hoisington*,
20 99 Wn. App. 423, 431 (2000)).

21     In *Carter*, the Washington Supreme Court "recognize[d] that equitable tolling of
22 the time bar may be available in contexts broader than those recognized by the *Bonds*

plurality." 172 Wn.2d at 929. It applied the actual innocence doctrine as an equitable exception to the time bar in a challenge to a persistent offender sentence. *Id*. It warned that "any application of equitable tolling, including under the actual innocence doctrine, must be done only in the narrowest of circumstances and where justice requires." *Id*.

In *Matter of Fowler*, 197 Wn.2d 46 (2021), the Washington Supreme Court expanded those predicates further. It determined that petitioner's own attorney's egregious misconduct in a habeas-style case constitutes extraordinary circumstances justifying equitable tolling. *Id*. at 53–54. The Washington Supreme Court explained that previously in *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 447–48 (2013), it was "not asked to decide, and therefore did not hold, that equitable tolling was limited to malfeasance by the opposing party[,]" *Matter of Fowler*, 197 Wn.2d at 55. It explained that limiting equitable tolling to malfeasance by the opposing party "would undermine the purpose of equitable tolling—to ensure fundamental fairness when extraordinary circumstances have stood in a petitioner's way." *Id*. It held that the Washington Court of Appeals erred when it stated that "'Washington courts require bad faith deception, or false assurances *caused by the opposing party or the court*' in order to justify equitable tolling." *Id*. (quoting *Matter of Fowler*, 9 Wn. App.2d 158, 166 (2019)). Therefore, court error and egregious attorney misconduct are also available predicates at least in the habeas or criminal context

The Ninth Circuit has commented (in an unpublished decision) that "[t]he current predicates for equitable tolling in civil cases under Washington law are not clear." *Eriksen v. Serpas*, 478 F. App'x 368, 370 (9th Cir. 2012) (citing *In re Carter,* 172 Wn.2d

at 928–29; *In re Bonds,* 165 Wn.2d at 141)). In *Hahn v. Waddington*, 694 F. App'x 494, 495 (9th Cir. 2007), another unpublished decision, the Ninth Circuit extended equitable tolling under Washington law in a § 1983 action when the plaintiff timely and appropriately filed in one district court, and the court erroneously dismissed his case when it should have transferred venue. The Circuit reasoned that strict adherence to the statute of limitations given the particular procedural unfairness was not consistent with § 1983, which "exists to promote 'compensation of persons whose civil rights have been violated, and prevention of the abuse of state power.'" *Id*. (citing *Burnett v. Grattan*, 468 U.S. 42, 53 (1984)). Moreover, "the purposes underlying the statute of limitations—finality and protection against stale and unverifiable claims—will not be frustrated by allowing equitable tolling here." *Id*. (citing *Kittinger v. Boeing Co.*, 21 Wn. App. 484 (1978)).

Plaintiffs argue that equitable tolling is similarly appropriate here because their claim is a valid § 1983 claim and their claim is neither stale nor unverifiable. Dkt. 109 at 22. However, applying these strictly purpose-based factors would appear to permit quite widespread application of equitable tolling in civil rights, and potentially other types of cases, particularly for those missing the statute of limitations by some short period, a few months or a year. The court's error in *Hahn* appears integral to confining equitable tolling to "the narrowest of circumstances," *Carter*, 172 Wn.2d at 929.

Recent decisions addressing equitable tolling "where justice requires" in this District do not suggest a clear unifying theme. In *Putz v. Golden*, 847 F. Supp. 2d 1273, 1285 (W.D. Wash. 2012), the Court found disputed facts could support equitable tolling

where, twenty years after the plaintiffs paid for a timeshare, the defendant had effective possession of the property in question and the purchase price despite acknowledging no right to do so. In *Aydelotte v. Town of Skykomish, et al.*, Case No. C14-307-MJP, Dkt. 74 (W.D. Wash. July 19, 2019), the Court concluded equitable tolling was warranted when a defendant the pro se plaintiff sought to join was on notice from the beginning of the litigation, had previously appeared and been dismissed, the delay came from appeal of the dismissal, and the initial dismissal for failure to serve was allegedly caused by the plaintiff's fear of defendants based on their threats and harassment. Conversely, in *Ceasar Alverto v. Cline*, Case No. C19-5053 RBL-TLF, 2019 WL 4044077, at *5 (W.D. Wash. Jul. 22, 2019), the Court denied equitable tolling when the plaintiff delayed filing a civil case based on his criminal defense attorney's warning that police would target his family if he testified in his own defense. The Court reasoned that "[g]ranting equitable tolling in instances where a conclusory allegation of a generalized threat is the basis for delaying the commencement of an action would extend equitable tolling beyond 'the narrowest of circumstances and where justice requires.'" *Id*. (quoting *Carter*, 172 Wn. 2d. at 929). Recent civil cases from the Washington Courts of Appeals have continued to rely on the traditional predicates. *See, e.g.*, *Nash v. Atkins*, No. 81841-4-I, 2020 WL 6708731, at *3–4 (Wn. App. Nov. 16, 2020) (no equitable tolling when traditional predicates were not shown); *Zellmer v. Dep't of Labor & Industries*, No. 53627-7-II, 2020 WL 5537007, at *5 (Wn. App. Sept. 15, 2020) (citing traditional predicates, distinguishing bad faith from negligence); *Wolfe v. Wash. State Dep't of Trans.*, No. 50894-0-II, 2019 WL 1999020, at *6 (May 7, 2019) (not necessary to assess plaintiff's

diligence when plaintiff failed to establish traditional predicates); *Price v. Gonzalez*, 4 Wn. App. 2d 67, 75–77 (2018) (emphasizing narrowness of court interpretation of traditional predicate of false assurances).

The Court thus concludes that equitable tolling in civil cases beyond the traditional predicates is undefined and best addressed by the Washington Supreme Court. Under RCW 2.60.030, federal courts may ask the Washington Supreme Court to rule upon unanswered questions of local law:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

Certification preserves important judicial interests of efficiency and comity. The certification process saves "time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

The Court therefore proposes certifying the following question to the Washington Supreme Court:

> In a civil case, should a court consider factors beyond the intent of the substantive statute, the intent of its statute of limitations, and the traditional predicates of bad faith, false assurances, and deception on the part of some third party when considering whether justice requires equitable tolling?

The parties are invited to respond to the Court's proposal, and to consult and submit revised or alternative questions, either together or separately, within ten days of

this Order. The Court will then decide whether to certify questions to the Washington Supreme Court and stay this case pending the answer.

Plaintiffs' Motion for Partial Summary Judgment on the Fact of Loss, Dkt. 90, is thus **GRANTED**, the Director's Motion for Summary Judgment, Dkt. 98, is **DENIED in part and the Court RESERVES RULING in part**, Plaintiffs' Motion for Summary Judgment on the Director's Affirmative Defenses, Dkt. 103, is **GRANTED in part** and the Court **RESERVES RULING in part**, Plaintiffs' Motion to Exclude Expert Testimony, Dkt. 110, is **DENIED as moot**, and the Court **RESERVES RULING** on Plaintiffs' Motion to Approve Formula to Correct Class Members' Accounts, Dkt. 111, and the Director's Motion to Exclude/Strike All Expert Testimony Not Disclosed, Dkt. 144.

**IT IS SO ORDERED.**

Dated this 23rd day of July, 2021.

[signature]

BENJAMIN H. SETTLE
United States District Judge