UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, et al.,

        Plaintiffs,

  v.

TRACY GUERIN, Director of the Washington State Department of Retirement Systems,

        Defendant.

CASE NO. 3:15-cv-05367-BHS

ORDER

THIS MATTER is before the Court on the parties' cross-motions for summary judgment on the applicability of Defendant Director Tracy Guerin's limitations period affirmative defense to Plaintiff Mickey Fowler's[1] § 1983 takings claim, Dkts. 98 and 103.

## I. SUMMARY

Fowler represents a class of Washington teachers who transferred from one state retirement plan, Teachers Retirement System (TRS) Plan 2, to a later plan, TRS Plan 3,

---

[1] The named plaintiffs are Mickey Fowler and Leisa Maurer (formerly husband and wife) as representatives of a class of some 23,000 similarly situated teachers. This order uses the singular, masculine "Fowler" for clarity and ease of reference.

prior to January 20, 2002. Dkt. 85 at 4–5. He asserts that the Department of Retirement Systems (DRS) failed to properly account for the daily interest he had earned on his Plan 2 retirement funds when he transferred those funds to Plan 3. He sued in June 2015, asserting a single 42 U.S.C. § 1983 takings claim for violation of his Fifth Amendment rights. Dkt. 1.

The Director argues that Fowler's claim is time-barred as a matter of law. She correctly asserts that the applicable limitations period is three years. Because the alleged taking occurred, and Fowler's § 1983 claim accrued, far more than three years before he brought this suit, his claim is facially time-barred.

Fowler argues that the limitations period on his takings claim was equitably tolled or otherwise does not apply, based on the circuitous and complicated history of his claim. He emphasizes that the Director repeatedly and, until 2018, successfully argued that his takings claim was not yet ripe, because the Director had not completed her rulemaking process.

The story of Fowler's takings claim began in 2005, and it includes litigation in Thurston County Superior Court, the Washington Court of Appeals, this Court, the Ninth Circuit, and the Washington Supreme Court. It has been detailed in this Court's prior orders and in various appellate opinions over time, though not in the context of the Director's limitations period affirmative defense. The Court will therefore recite much of it again.

//

//

## II. BACKGROUND

The dispute involves a class of Washington State teachers asserting that the DRS unlawfully failed to pay them daily interest on their retirement account balances when they transferred from TRS Plan 2[2] to TRS Plan 3, prior to January 20, 2002. Fowler contends that most class members transferred in 1996–1997. Dkt. 1 at 7.

Fowler's predecessor, Jeffrey Probst, sued in Thurston County Superior Court in 2005, asserting that the DRS violated Washington statutes and its fiduciary duties when it failed to properly account for the interest accrued on balances transferred[3] into the new TRS Plan 3. The Superior Court dismissed the case because the DRS had authority to calculate interest as it did, and did not act in an arbitrary and capricious manner. *Probst v. Wash. State Dep't of Ret. Sys.*, 167 Wn. App. 180, 185 (2012) ("*Probst I*"). Fowler[4] appealed, and Division Two of the Washington Court of Appeals reversed, holding that the DRS's rule failed to appropriately consider whether to account for daily interest, and its adoption of the rule was therefore arbitrary and capricious. *Id.* at 193–94. It declined to reach Fowler's "constitutional takings argument," having resolved the case on other grounds. *Id.* at 183 n.1.

---

[2] Plan 2 is a defined benefit plan, while Plan 3 is part defined benefit and part defined contribution. The defined benefit portion of Plan 3 is one half of the benefit in Plan 2.

[3] The DRS rule that was the subject of the state court action provided that if an account had a "zero balance" at the end of a given quarter, it would receive zero interest for that entire quarter. Dkt. 18-1 at 20–21. Fowler's Plan 2 account showed a zero balance at the end of the quarter in which he transferred to Plan 3, and thus did not earn any interest in that quarter, even though he had a positive balance in his account for some portion of it. *See id.* at 51.

[4] A portion of the Superior Court class action settled in 2008, and in 2009 Fowler became the named plaintiff for the subset of the class claims—those relating to transfers prior to January 20, 2002—which did not settle. *See Probst I*, 167 Wn. App. at 184.

The Superior Court in turn remanded the action to the DRS for additional rulemaking under the Administrative Procedures Act (APA), consistent with the Court of Appeals' *Probst I* opinion. Fowler read *Probst I* as requiring the Superior Court to itself determine the interest owed and asked the Court of Appeals to recall its mandate. Fowler also appealed the Superior Court's order.

The Court of Appeals declined to recall its mandate, and its unpublished opinion addressed the "only issue properly before [it]": whether the Superior Court had abused its discretion by remanding the action to the DRS under the APA and *Probst I*. *Probst v. Wash. State Dep't of Ret. Sys.*, 185 Wn. App. 1015, 2014 WL 7462567, at *1, 2 (Dec. 30, 2014) ("*Probst II*"). Division II concluded that it had not. It explained that Fowler misconstrued *Probst I*, that the Superior Court correctly ruled that the APA applied, and that it properly remanded the action to the DRS. *Id.* at *6.

It also explained that Fowler's alternate argument[5]—that the "retroactive application of a new rule that does not use the common law daily interest rule *will* result in an unconstitutional taking"—was speculative, because "the DRS has not made or

---

[5] It remains unclear whether Fowler's initial state court complaint expressly asserted a takings claim under the Washington or United States constitutions, or whether he later asserted that the Director's conduct amounted to a taking. Both state Court of Appeals' opinions describe Fowler's taking position as an argument, not a claim. *Probst I*, 167 Wn. App. at 182 n.1; *Probst II*, 2014 WL 7462567, at *6. Fowler emphasizes that, in 2009, in his very first brief in state court, he asserted that the Fifth Amendment prohibited the Director from appropriating accrued interest. Dkt. 169 at 6. The Court concludes that, for purposes of this case, it does not matter whether he asserted such a claim in state court.

ORDER - 4

applied a new rule resulting in an unconstitutional taking." *Id.* at *1, 6 (emphasis added). It affirmed the Superior Court's remand.

Six months later, on June 1, 2015, Fowler sued DRS Director Guerin in this Court, expressly asserting a 42 U.S.C. § 1983 takings claim for violation of the Fifth Amendment, as applied to the states through the Fourteenth Amendment. Dkt. 1 at 11. His complaint recites the history above, and explains that he is suing here because he disagrees with the state courts' treatment of his takings claim:

> For years Plaintiffs have sought relief in the Washington state court system. The Thurston County Superior Court and the Washington Court of Appeals have both declined or refused to consider Plaintiffs' Takings claim. Although the seizure of property occurred almost 20 years ago, the Washington Court of Appeals said it was "premature" to resolve Plaintiffs' Takings claim.

*Id.* at 2.

Director Guerin moved for summary judgment on Fowler's claim, arguing it was (1) barred by the Eleventh Amendment; (2) barred by the *Rooker-Feldman* doctrine; (3) barred by issue or claim preclusion; (4) not ripe for review; and (5) meritless as a takings claim because the teachers were not entitled to daily interest. Dkt. 14.

This Court agreed that the claim was not yet ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), because the administrative remedy—the DRS rulemaking—was, at that time, ongoing. Dkt. 28 at 6–7. It, like the parties, viewed the claim as a regulatory takings claim. It dismissed Fowler's claim without prejudice as prudentially unripe. *Id.* at 7.

ORDER - 5

Fowler appealed and, just before oral argument, the DRS's new, 2018 rule went into effect. *See* WAC 415-02-150 (2018). The new, retroactive rule[6] confirmed the prior, non-daily interest calculation: "Your individual account does not 'earn' or accrue interest on a day by day basis." WAC 415-02-150(5) (2018).

The Ninth Circuit reversed this Court's order dismissing the case on ripeness grounds, concluding that the "DRS's withholding of the interest accrued on the Teachers' accounts constitutes a *per se* taking to which *Williamson County*'s prudential ripeness test does not apply." *Fowler v. Guerin*, 899 F.3d 1112, 1118 (9th Cir. 2018). It explained the well-established common law that the right to daily interest is a property interest "protected by the Takings Clause regardless of whether a state legislature purports to authorize a state officer to abrogate the common law." *Id.* at 1118–19.

Given the length of time the case had been "held up in the courts," the Ninth Circuit also addressed the Director's other summary judgment arguments. *Id.* at 1118. It specifically held that "the Teachers state a takings claim for daily interest withheld." *Id.* at 1119. It rejected the argument that Fowler's claim was barred by issue preclusion or *Rooker-Feldman*, because the state courts did *not* adjudicate any takings claim asserted there. *Id.* It also rejected the Director's Eleventh Amendment defense, because the money at issue belonged to the teachers, not the state. *Id.* at 1120. The Ninth Circuit remanded

---

[6] The Director issued another new rule in 2022. It does provide for daily interest on TRS Plan 2 individual accounts, but is silent on retroactivity. *See* WAC 415-02-150(3) (2022). Fowler argues that the new rule reflects the Director's acknowledgment that the failure to pay such interest is an unconstitutional taking. Dkt. 166 at 9. He does not discuss the new rule's impact on his claim or his damages.

the case to reconsider class certification, and to permit discovery, if necessary, before deciding if the class should be given injunctive relief. *Id.* at 1120–21.

On remand, this Court certified the following plaintiff class:

> All active and retired TRS members who: (1) were previously members of TRS Plan 2 and (2) transferred from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002.

Dkt. 58 at 10. On Fowler's motion, the Court refined this definition in January 2021, and the class consists of "[a]ll teachers who transferred from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002." Dkt. 85 at 5–6.

Meanwhile, the Director sought and obtained (over Fowler's objection) leave to amend her Answer to assert that, if the teachers' per se takings claim was ripe, it was barred by the applicable three-year limitations period. Dkts. 78, 80, 85. The Court rejected Fowler's claims that the Director had already litigated and lost the limitations defense in state court, that the Ninth Circuit's limited remand did not allow for a new defense, and that she was judicially estopped from asserting that the takings claim was untimely after asserting in state court for years that his takings claim was not yet ripe. Dkts. 80, 85. His argument here is a variation on this latter point.

The Director moved for summary judgment on her limitations period affirmative defense. Dkt. 98. Fowler also sought summary judgment on the Director's limitations period affirmative defense. Dkt. 103. He argued that the limitations period was tolled by the state court filing, that the state court already ruled that the claim was timely (and that ruling is the law of the case), and that the limitations period was equitably tolled in the interest of justice. *Id.*

The Court concluded that Fowler had established a takings claim, but that his only viable theory to avoid the conclusion that his claim was time-barred was the application of equitable tolling. Dkt. 153 at 3. Because the elements of equitable tolling under Washington law were not clear, the Court informed the parties of its intent to certify a question to the Washington Supreme Court. *Id.* With the parties' input, it certified the following question to that court:

> Under Washington law, what are the necessary and sufficient conditions—the minimum predicates—a plaintiff in a civil action (other than a personal restraint or habeas corpus petition) must establish to equitably toll the limitations period otherwise applicable to their claim?

Dkt. 157 at 6. This Court stayed the case pending the answer. *Id.*

The Washington Supreme Court's published opinion reaffirmed that a plaintiff seeking to equitably toll a limitations period must establish four elements:

> A plaintiff seeking equitable tolling of the statute of limitations in a civil suit must demonstrate that such extraordinary relief is warranted because (1) the plaintiff has exercised diligence, (2) **the defendant's bad faith, false assurances, or deception interfered with the plaintiff's timely filing**, (3) tolling is consistent with (a) the purpose of the underlying statute and (b) the purpose of the statute of limitations, and (4) justice requires tolling the statute of limitations.

*Fowler v. Guerin*, 200 Wn.2d 110, 125 (2022) (en banc) (emphasis added).

The parties have submitted supplemental briefing on the impact of this holding on the pending motions. Dkts. 164, 166, 167, 169. Both parties address each of the four required elements, but the Court is primarily concerned with the second, bolded above.

If Fowler could establish this element—that the Director engaged in bad faith, or did something deceptive, inappropriate, or otherwise unfair, which interfered with his

ability to timely file this action—the Court would have little trouble concluding that he was otherwise diligent, that equitable tolling is consistent with the purposes of the Fifth Amendment and of the limitations period, and that justice requires tolling. But after reviewing the briefing, the record, and the prior opinions, the Court concludes that Fowler cannot establish that the Director's bad faith, false assurances, or deception interfered with his timely filing this lawsuit. Equitable tolling does not apply, and Fowler's § 1983 takings claim in this Court is time-barred as a matter of law.

## III.   DISCUSSION.

**A.   Summary Judgment Standard.**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

The facts are not disputed.

**B.      Fowler's § 1983 claim is subject to a three-year limitations period.**

42 U.S.C. § 1983 does not contain a limitations period. Federal (and state) courts instead "borrow" § 1983 limitations periods from analogous state law. They specifically borrow the state's "general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989). In Washington, that statute is RCW 4.16.080(2), which is a three-year limitations period. *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Therefore, in this District, the limitations period for a § 1983 claim is three years.

**C.      The limitations period was not tolled, and it expired in 2012.**

Fowler alleges and demonstrates that the taking at issue occurred prior to January 2002, and, for most class members, in 1996–1997. It is also clear that the Director raised the limitations period affirmative defense in state court when, in 2009, Fowler became the plaintiff for a class of teachers who transferred their retirement accounts from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002. The Superior Court ruled that Fowler's claims were timely, because they did not accrue until he discovered that the DRS had not accounted for daily interest when he transferred. *See Probst I*, 167 Wn. App. at 185. The Director did not appeal that ruling.

But even if the state court's determination that Fowler's 2009 state court lawsuit was timely is now unassailable, that does not alter or remedy the fact that he did not commence *this* action until June 2015. The takings claim asserted here (whether it was also asserted in state court, or not) accrued some time before Fowler became the class plaintiff in 2009; he necessarily knew all the facts supporting his claim at that time. This conclusion is only bolstered if the Court accepts Fowler's argument that he sufficiently asserted a federal takings claim there, by articulating it in a brief filed October 23, 2009. *See* Dkt. 108 at 51–52.

The Director argues that Fowler's claim is therefore facially time-barred, and that the Washington Supreme Court made clear that to equitably toll the limitations period, Fowler must demonstrate that the Director engaged in bad faith, made false assurances, or deceived Fowler in a way that interfered with his ability to timely commence this lawsuit. Dkt. 164 at 2. She argues that he cannot do so as a matter of law.

Fowler's primary argument is that the Director repeatedly, successfully, and falsely assured the state courts that his takings claim was not yet ripe, because her ongoing rulemaking process might result in a rule providing for daily interest on transferred accounts. Dkt. 169 at 7. He asserts that these many assurances "interfered" with his "ability to obtain a ruling *in the timely state proceeding*." *Id.* at 5 (emphasis added); *see also* Dkt. 166 at 5. Relying on Justice Yu's concurring opinion in *Fowler v. Guerin*, he argues that, under Washington law, equitable tolling is a flexible, fact-specific inquiry, and emphasizes that the evaluation of the plaintiff's diligence cannot be assessed

independently of the defendant's actions. Dkt. 166 at 9–10 (citing *Fowler*, 200 Wn.2d at 126) (Yu, J., concurring)).

Justice Yu's concurring opinion persuasively explained that equitable tolling is not a sanction imposed on the defendant, but it acknowledged that the fact-specific inquiry nevertheless includes "how the defendant's conduct affected the plaintiff's ability to timely file their claim." *Fowler*, 200 Wn.2d at 126.

Fowler relies on arguments that the DRS (the state court defendant) made in the Superior Court and the state Court of Appeals, articulating its position that a constitutional challenge to a not-yet finalized interest rule was not ripe. The Director catalogues these statements in her supplemental brief, Dkt. 164 at 4–5.

There are at least two major problems with Fowler's assertion that arguments made to the state courts support equitable tolling of the limitations period applicable to his claim here.

First, Fowler cites no authority for the proposition that a party's successful arguments in one litigation can amount to the sort of false assurances required for equitable tolling of the limitations period otherwise applicable to a claim the plaintiff later files in a different court. The Ninth Circuit held that the failure to pay daily interest is a *per se* taking, not a regulatory one, and reversed this Court's dismissal on that basis. It also necessarily disagreed with the Washington Court of Appeals on the ripeness issue, but it cannot and did not reverse that court's opinions.

There was nothing "false" or deceptive about the arguments the DRS made in the state courts, and Fowler points to no false assurances made to him that led him to delay

filing. Indeed, his argument is that the DRS's assurances in the state courts prevented him from obtaining relief *in state court*, not that those assurances precluded him from earlier filing this action. *See* Dkts. 166 at 14 and 169 at 10.

Second, Fowler also fails to establish that the state court assurances upon which he relies had any causal relationship to the date he filed this action. Even if successful arguments in a different court system could amount to the sort of false assurances required for equitable tolling, the Washington Court of Appeals declined to address Fowler's takings claim in 2012 not because it agreed the claim was unripe, but because Fowler had prevailed on his position that the DRS rule failing to consider daily interest was arbitrary and capricious. It explained: "[b]ecause we decide this case on grounds of arbitrary and capricious agency action, we do not reach the Fowlers' constitutional takings argument." *See Probst I*, 167 Wn. App. at 183 n.1. The earliest "assurance" upon which Fowler relies was made by the DRS to the Superior Court in May 2013, a year after the limitations period expired. *See* Dkt. 104 at 3.

The Washington Court of Appeals did not agree that Fowler's takings claim was unripe until *Probst II* in 2014, at least two years after the limitations period on Fowler's current Fifth Amendment claim had expired. The Court of Appeals held that the Superior Court had not abused its discretion in remanding the matter to the Director for further rulemaking under the APA and explained that the takings claim was "speculative" until that rule was final. *Probst II*, 2014 WL 7462567, at *6. Fowler points to no false assurance or deceptive conduct prior to the 2012 expiration of the three-year limitations period on the takings claim he filed here in 2015. Nothing the DRS argued in state court

interfered with Fowler's ability to timely file this case. Instead, as his complaint in this court explains, he finally sued here because he was frustrated at the state courts' delay in addressing his takings claim. Dkt. 1 at 2. This assertion is a recognition that he was in fact undeterred by any "false assurances."

The Director's arguments to the state courts were not false assurances and, even if they were, they could not, and did not, dissuade or otherwise hinder Fowler from timely asserting here a Fifth Amendment *per se* takings claim based on an event that by definition occurred before January 2002. Fowler has not established that the limitations period should be equitably tolled, and his claim in this Court is not timely.

\*\*\*

The Court is aware that this case has been ongoing for eight years, has been to the Ninth Circuit and the Washington Supreme Court, and that the motions decided here have been pending for six months. The dispute itself is now more than 20 years old, and it has spent time in five different courts.[7] The Court recognizes the irony of its determination that the class takings claim is time-barred; such a determination is usually made at the front end of litigation. The State settled with the teachers who transferred funds after January 2020, to preserve its defense that claims based on earlier transfers were untimely. Fowler prevailed on the timeliness of his claims in state court, but his perhaps understandable effort to assert his takings claim here is time-barred.

//

---

[7] The Court is unaware whether Fowler's state court action remains open.

1    The Director's motion for summary judgment on her limitations period defense, Dkt. 98, is **GRANTED**, and this matter is **DISMISSED with prejudice**. The motion to vacate the Court's prior rulings (included in Dkt. 164) is **DENIED**. Fowler's motion for summary judgment on the Director's limitations period affirmative defense, Dkt. 103, is **DENIED**.

The Clerk shall enter a JUDGMENT and close the case.

IT IS SO ORDERED.

Dated this 19th day of May, 2023.

BENJAMIN H. SETTLE
United States District Judge