The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICKEY FOWLER, LEISA MAURER, and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TRACY GUERIN, Director of the Washington State Department of Retirement Systems,<br><br>Defendant. | Case No. 3:15-cv-05367-BHS<br><br>**ORDER APPROVING FORMULA AND ITS APPLICATION**<br><br>NOTE ON MOTION CALENDAR:<br>March 21, 2025 |

**Matter Before the Court**

Mickey Fowler, Leisa Maurer, and the class of public school teachers (hereafter "the teachers") move to approve the formula for an injunction requiring the Director to correct the accounting of funds held in the Teachers Retirement System (TRS) Plan 2/3 trust fund and credit funds to the teachers' TRS Plan 3 accounts necessary due to DRS's taking of interest. *Fowler v. Guerin*, 899 F.3d 1112, 1120 (9th Cir. 2018), rehearing en banc denied, 918 F.3d 644 (2019), certiorari denied, 140 S.Ct. 39 (2019). Several years later, the Ninth Circuit ruled on the 2018 mandate, reversed this Court's dismissal of the teachers' case on statute of limitations grounds, and remanded for the Court to decide "whether to approve the Teachers' proposed formula to correct the Teachers' accounts" to correct the accounts so those who transferred from TRS Plan

ORDER APPROVING FORMULA - 1
3:15-cv-05367-BHS

1  2 to individual TRS Plan 3 accounts.  *Fowler v. Guerin*, 2024 WL 4891016 at *3 and n.2 (9th
2  Cir. No. 23-35414, Nov. 26, 2024), rehearing en banc denied, Jan. 8, 2025.  The Ninth Circuit
3  also affirmed the Court's 2021 rulings that the teachers had established a taking of interest as a
4  matter of law and that the transfer incentive payment is a separate obligation owed to the
5  teachers that cannot be used to offset the amount of interest that the Director kept to pay benefits
6  to others.  *Id.* at *2.  The Court approves the formula and its application, as explained below.

## Matters Already Established

8      This case began in administrative proceedings before the Department of Retirement
9  Systems in 2003-05.  There, daily interest was sought for employees transferring from a Plan 2
10  defined benefit account to a Plan 3 defined contribution account.  Dkt. 15 (JSR) at 2; *Fowler v.*
11  *Frost*, 2015 WL 930486 at *1, n.1 (W.D. Wash. Dec. 22, 2015).

12      There are over 20,000 teacher class members in this case.  *Fowler v. Guerin*, 2019 WL
13  3337964 at *3 (W.D. Wash. July 25, 2019).[1]  For the vast majority of these teachers, the
14  transfers from TRS Plan 2 to TRS Plan 3 occurred in 1996-98 when the accumulated
15  contributions plus interest were transferred from TRS Plan 2 to TRS Plan 3.  *Probst v. DRS*, 167
16  Wn.App. 180, 184-85 (2012).  The amount transferred at that time did not include daily interest.
17  *Id.* at 185.

18      The contributions plus interest in the teachers' individual accounts are their funds, "not
19  state funds."  *State Ret. Board v. Yelle*, 31 Wn.2d 87, 110-11 (1948); *Bowles v. DRS*, 121 Wn.2d
20  52, 75 (1993).  The teachers' funds in their Plan 3 accounts are held in trust.  *Fowler*, 899 F.3d at
21  1115, 1120; RCW 41.34.120.

22      The teachers made monthly contributions to their Plan 2 accounts "from each paycheck."
23  *Fowler*, 2019 WL 3337964 at *1.  These contributions were made from the date of hire to the

---

[1] The "20,000 class members" figure stated in the class certification order was based on an estimate before receiving class member data.  The data provided by DRS show there are 26,785 class members.  Marshall [2/20/25] Dec., ¶32.

**ORDER APPROVING FORMULA** - 2
3:15-cv-05367-BHS

date of transfer to TRS Plan 3 and those contributions since 1977 earned interest at the rate of 5.5% annual interest compounded quarterly. *Fowler*, 899 F.3d at 1115; Dkt. 18 at 4 (Admission No. 1 from administrative proceedings in 2004). "All contributions were transferred to a state-managed comingled trust fund for investment purposes." *Fowler v. Guerin*, 2021 WL 228900 at *1 (W.D. Wash. Jan. 22, 2021); Dkt. 18, App. p. 1 (Admission No. 2 from administrative proceedings in 2004).

Although the teachers' accounts earned interest, DRS did not credit the teachers' individual accounts with all the interest their accounts earned by simply not crediting interest daily. Instead, DRS used an odd crediting method explained by the Ninth Circuit (899 F.3d at 1115):

> DRS determines the amount of interest to credit to Plan 2 accounts based on the accounts' balances at the end of the prior quarter. Therefore, DRS does not credit accounts with the interest earned on the funds in the account during that quarter. In addition, if a Plan 2 account has a zero balance at the end of a quarter, the account is not credited with interest earned on any funds in that account during either that quarter or the prior quarter.

See also Dkt. 13 (Answer), ¶¶37-42.

Thus, "[i]t is undisputed that DRS did not pay the Teachers daily interest." *Fowler*, 2024 WL 4891016 at *2; *Fowler v. Guerin*, 2021 WL 3129626 at *2 (W.D. Wash. July 23, 2021). Instead, DRS "skimmed" the daily interest earned on the teachers' accounts and used it "for other members." *Fowler*, 899 F.3d at 1115, 1120; *Fowler*, 2024 WL 4891016 at *2; Dkt. 18 at 103, 136.

The Ninth Circuit found that a taking had occurred because daily interest is a core property right protected by the Takings Clause. 899 F.3d at 1118-19; 2024 WL 4891016 at *2-3, affirming this Court; *Fowler*, 2021 WL 3129626 at *3.

Because the vast majority of the teachers transferred in 1996-98, the teachers have been deprived of their interest for a very long time (at least 26 years) during which their funds were invested in the Commingled Trust Fund earning compounded investment returns over the many years they were held in the trust fund. *Fowler*, 2021 WL 228900 at *1 (noting that "[a]ll

ORDER APPROVING FORMULA  -  3
3:15-cv-05367-BHS

contributions" are in at "state-managed comingled trust fund").

## Components of the Formula

I.  **First Component – Calculating Daily Interest**

The first component of the formula is calculating daily interest.  The DRS daily interest error occurs with each teacher contribution because DRS did not credit interest to a deposit in the quarter in which it was made.  *Fowler*, 899 F.3d at 1115.  Thus, for each teacher, DRS's withholding of interest begins when the teacher makes each contribution, which occurs when the funds are taken out of their monthly paycheck.  The first quarter-ending balance is wrong because it only includes those deposits, but not the daily interest earned on those deposits during the quarter, and this omission continues for each quarter of work thereafter.  *Id.*  The quarterly compounding (earning interest on principal plus accrued interest) is accordingly also wrong for each quarter.  Moreover, *id.*, DRS did not credit the class members' accounts with interest on the entire account balance (the previous quarter-ending balance plus contributions made during the quarter) during the quarter of transfer to TRS Plan 3.  Thus, the interest earned each quarter and quarterly compounding for each quarter of the teacher's work needs to be calculated to the date of transfer to correct each class member's final account balance.

Under the teachers' formula, daily interest begins to accrue when the retirement contributions were deducted from the teachers' paychecks.  Previously, when submitting testimony to show the fact of loss, the teachers were using the "transaction dates" in the DRS data file provided because DRS said that is "the date DRS received the member's TRS Plan 2 contribution."  Later, in 2023, DRS said the "transaction date" is *not* the date when the funds are received, *i.e.*, *not* the date of contribution.  Stobaugh [2/20/25] Dec., ¶10 (referring to Blocki Dec.).  The best information available is the earnings period end date, where the employee contributions are removed from the teachers' paychecks.  Marshall [2/20/25] Dec., ¶30; Stobaugh [2/20/25] Dec., ¶¶10-13.  The withheld daily interest is calculated in the Marshall [2/20/25] Dec., ¶33.

**ORDER APPROVING FORMULA**  -  4
3:15-cv-05367-BHS

**II.    Second Component – Accounting for the Daily Interest Missing from the Transfer Payment**

The second element of the formula involves the incentive payment required by statute for teachers who requested transfer from TRS Plan 2 to TRS Plan 3 before January 1, 1998. The incentive payment became a contractual right on July 1, 1996. RCW 41.34.100. Under RCW 41.32.8401, the transferring teachers received an incentive payment in their TRS Plan 3 accounts based on their account balance (accumulated contributions plus interest) on December 31, 1995, called "Transfer Basis Amount" in the data for each class member provided by DRS described in DRS's excel spreadsheet. *Fowler*, 2021 WL 3129626 at *3 ("the Legislature created a legal right to very substantial Transfer Payments as an incentive for members who transferred from Plan 2 to Plan 3"). The final account balance for the transfer payment includes contributions made after December 31, 1995, but for work performed before December 31, 1995. Dkt. 142, attaching as Exhibit 1 the July 19, 1995 decision statement by DRS, Bates Nos. 100186-90. DRS provided the data needed to account for this in the earnings history data that it supplied. Marshall [2/20/25] Dec., ¶26. Most class members received a payment of 65% of that balance, a few were eligible to receive only 40%, and a small number were not eligible for any additional payment. See RCW 41.32.8401. The data provided by DRS show which teachers were eligible to receive 65%, 40%, or zero, depending on each teacher's status and transfer date. Marshall [2/20/25] Dec., ¶15. The matter to be corrected is that DRS did not credit the right amount of interest when it determined the Final Account Balance as of December 31, 1995, called the Transfer Basis Amount.

Thus, to correct DRS's error in not crediting daily interest, one must determine for each class member the missing interest up to December 31, 1995 to determine the correct account balance on that date. DRS's Final Account Balance on December 31, 1995 is then subtracted from the Final Account Balance on that date when the missing interest is added. The difference is then multiplied by the appropriate transfer payment percentage, 65% or 40% or 0%, which is the amount added to the accumulated contributions under RCW 41.32.8401. Marshall [2/20/25]

**ORDER APPROVING FORMULA  -  5**
3:15-cv-05367-BHS

Dec., ¶¶15-16.

The total amount of funds transferred by DRS at the time of the transfers in 1996-98 (accumulated contributions plus accrued interest plus transfer incentive payment) was short because of the error in properly crediting daily interest and because the transfer payment was short due to uncredited daily interest. This amount is calculated in the Marshall [2/20/25] Dec., ¶¶35-36.

### III. Third Component – Investment Returns in the Commingled Trust Fund

The final element in the formula is to calculate the teachers' withheld earnings for the period from the date of transfer to Plan 3 to the date of account correction. During this time the teachers' funds (the amount withheld described above) were held in the Commingled Trust Fund where the teachers' money earned investment returns for the trust fund for over 26 years. For several independent reasons, leading to the same outcome, the teachers' funds must be returned with the gains DRS obtained by this withholding.

Most importantly, turning over the actual earnings on the teachers' funds is required by the Takings Clause because these earnings are the property of the teachers. The Supreme Court in *Phillips* concluded that individuals have a protected *property right to the income earned* on their funds in government-managed accounts because the rule that "interest follows principal" is a core property right established in the English common law since at least the mid-1700s. *Phillips,* 524 U.S. at 165. As the Supreme Court explained, "[t]he earnings of a fund are incidents of ownership of the fund itself and *are property just as the fund itself* is property." *Webb's Fabulous Pharmacies v. Beckwith,* 449 U.S. 155, 164 (1980) (emphasis added). The "income generated by funds held in [government-managed] accounts is the 'private property' of the owner of the principal." *Phillips*, 524 U.S. at 172. Accordingly, "any interest that *does* accrue attaches as a property right incident to the ownership of the underlying principal." *Id.* at 168 (emphasis by Supreme Court).

The Ninth Circuit recognized that in both *Webb's* and *Phillips* "the [Supreme] Court

**ORDER APPROVING FORMULA**  -  6
3:15-cv-05367-BHS

relied…upon the traditional common law rule that 'interest follows principal' in recognizing a protected *property right in earned income*." *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1200 (9th Cir. 1998) (emphasis added). The Ninth Circuit in *Fowler* followed *Schneider* and *Phillips* in holding there was a taking in this action. 899 F.3d at 1118-19; 2024 WL 4891016 at *2-3.

The Fifth Amendment's Takings Clause thus requires not just return of the omitted daily interest, but also the earnings generated by the withheld interest while it was wrongly held by the government. *Phillips*, 524 U.S. at 168, 172; *Goldberg v. Frerichs*, 912 F.3d 1009, 1009-12 (7th Cir. 2019) (a state may not take custody of property and retain income that it earns). *Goldberg* said that the Takings Clause requires the government "to turn any gain over to the owner." 912 F.3d at 1011. It is "vital" to do so. *Id.* This follows *Phillips*'s holding that all earnings on a person's funds belong to the account owner, not the agency holding and investing the funds.

Second, the teachers' funds are held in trust for members, bringing the principles of trust law into the case. The Plan 3 statute, RCW 41.34.120, states:

> *All moneys in member accounts*, all property and rights purchased therewith, *and all income attributable thereto*, *shall be held in trust* by the state investment board… [Emphasis added.]

The state investment board thus holds and invests the teachers' money in its Commingled Trust Fund, while DRS tracks teachers' contributions and credits their individual accounts for accumulated interest. *Fowler*, 899 F.3d at 1115. See also 899 F.3d at 1120, quoting *Taylor v. Westly*, 402 F.3d 924, 932 (9th Cir. 2005) ("Money that the state holds in custody for the benefit of private individuals is not the state's money…").

Return of the gains on the teachers' withheld funds is also required by trust law. The Ninth Circuit determined that the Director breached her duty to teachers by keeping their withheld interest in the Commingled Trust Fund, instead of crediting the interest to the teachers' TRS Plan 3 accounts. *Fowler*, 899 F.3d at 1118-19; *Fowler*, 2024 WL 4891016 at *2-3. And under trust law, when a trustee breaches a duty, courts "'provide relief in the form of monetary

compensation for a loss resulting from a trustee's breach of duty, and to prevent unjust enrichment.'"  *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2019), quoting *Signa Corp. v. Amara*, 131 S.Ct. 1866, 1880 (2011); *In re Wash. Builders Benefit Trust*, 173 Wn.App. 34, 81-82 (2013) (trustee who breaches fiduciary duty required to return the interest earned by a trust fund that the trustee wrongfully retained"); *Restatement (Third) of Trusts*, § 76(2)(c), p. 68 (2007).  Accordingly, under trust law the Director must return to the TRS Plan 3 members the gains made on their funds in the Commingled Trust Fund.

      The Plan 3 statute also requires return of the income received on the teachers' withheld funds.  RCW 41.34.120 ("all income attributable" to members' accounts "shall be held in trust"); RCW 41.50.145(2) (when a DRS error causes a "loss of investment return," it must credit the amount necessary from the Plan 2/3 trust fund to correct the error).

      DRS has recently determined—as of December 31, 2024—the investment gains (net of fees) that the teachers' funds earned in the Commingled Trust Fund.  The daily interest that DRS kept has earned investment gains at the annual rate of 8.92% during the over 26 years they have been in the Commingled Trust Fund.  DRS publishes this determination on its website.  A copy is attached as an appendix.  Thus, DRS has determined precisely the amount of investment gains to be returned to the teachers.  Stobaugh [2/20/25] Dec., ¶¶5-7; Marshall [2/20/25] Dec., ¶20.

      Moreover, the principles above are consistent with the general common law of restitution.  Measuring a loss by the amount DRS gained from its investment of the teachers' withheld funds is appropriate since the wrongdoer would otherwise retain the benefits of the wrongdoing.  The Ninth Circuit explained (*U.S. Commodity Futures Trading Comm'n v. Crombie*, 914 F.3d 1208, 1216 (9th Cir. 2019)):

> Restitution is a remedy designed to prevent a defendant from unjustly enriching himself at another's expense. *Restatement* [*Third*] *of Restitution* §§ 1, 3, 49. Where a defendant has profited from his wrongful actions, restitution can take the form of an order requiring the defendant to disgorge those wrongfully gotten profits and transfer them to the victims. *Id*. § 51(4); *see also Co Petro Mktg. Grp.*, 680 F.2d at 583.

This principle is stated in *Restatement (Third) of the Law of Restitution and Unjust Enrichment*

**ORDER APPROVING FORMULA** - 8
3:15-cv-05367-BHS

1  §53 (2011).  "A person who is liable to make restitution of property or its value" is liable for
2  "consequential gains." *Id.*, §53, p. 244.  "Consequential gains are profits realized through the
3  defendant's subsequent dealings with such an asset…" *Id.*, § 53(2) and (3).  Without such
4  restitution, the defendant is unjustly enriched.  *U.S. Commodity Futures v. Crombie*, 914 F.3d at
5  1216; *Nelson v. Appleway Chev.*, 160 Wn.2d 173, 187-88 (2007); *Moore v. HCA*, 181 Wn.2d
6  299, 311, 314 (2014).

7  Moreover, the IRS correction procedure for retirement plans also requires the correction
8  of accounts to include all gains lost due to an operational error, and the Washington Legislature
9  mandated that this procedure be followed.  The Legislature mandated in the Plan 3 statute that
10 any investment returns lost due to a DRS error be corrected by crediting the member with money
11 out of the TRS Plan 2/3 trust fund.  RCW 41.50.145(2); *Fowler*, 899 F.3d at 1120; *Fowler*, 2024
12 WL 4891016 at *3, n.2.  The Plan 3 statute specifically incorporated the IRS procedure,
13 requiring that the statute "shall be administered" in accordance with the "plan qualification
14 requirements imposed on government plans under section 401(a) of the Internal Revenue Code."
15 RCW 41.34.090(1).  The plan must be construed to satisfy requirements of the tax code, and if
16 any conflict exists, the conflicting part is "inoperative."  RCW 41.34.090(2) and (3).  DRS
17 Assistant Director Seth Miller explained that "RCW 41.34.090 reflects the priority that the State
18 places on qualifying its retirement plans under federal tax law."  Dkt. 99 (Seth Miller Dec.), ¶11.

19 RCW 41.34.090 thus requires DRS to comply with Internal Revenue Service plan
20 qualification requirements for IRS Code § 401(a) government plans such as TRS Plan 3.  TRS
21 Plan 3's operational error in failing to credit daily interest must be corrected, including turning
22 over the gains on these funds received by the plan due to the error.  The IRS Employee Plans
23 Compliance Resolution System (EPCRS), to which government plans such as TRS are subject, is
24 found in Revenue Procedure 2021-30 (https://www.irs.gov/pub/irs-drop/rp-21-30.pdf).  Under
25 the correction principles "a failure is not corrected unless full correction is made with respect to
26 all participants and beneficiaries, and for all taxable years[.]"  *Id.*, Sec. 6, *Correction Principles*
27

**ORDER APPROVING FORMULA** - 9
3:15-cv-05367-BHS

*and Rules of General Applicability*, p. 28.  The correction for lost investment gains when there are multiple possible investments uses "the rate of return of the fund with the highest rate of return under the plan for the period of the failure may be used to determine the Earnings rate for all corrective contributions or allocations."  *Id.*, App. B, Sec. 3.01(3)(b), p. 119.  When there are multiple years of lost earnings, the Earnings Rate is determined for each year the corrective contributions would have earned interest and that amount is added to the employees' accounts.  *Id.*, Sec. 3.02, Examples 28 and 29, pp. 121-23.  Here, DRS has determined the earnings rate—8.92% for each year that the teachers' funds were involuntarily invested in the Commingled Trust Fund/TAP, at least 26 years for most class members.

The Ninth Circuit held there was an error in crediting daily interest.  *Fowler*, 899 F.3d at 1118-19; *Fowler*, 2024 4891016 at *2-3.  DRS agrees a plan correction must be made: "[b]ecause the Ninth Circuit has held that it was an error for the Director not to credit daily interest to members' accumulated contribution accounts, it is instructive to consider generally accepted correction methods for qualified retirement plans," which he identified as "[t]he Employee Plans Compliance Resolution System [EPCRS]."  Dkt. 122 (DRS actuary Scott Miller Dec.), ¶28.  And DRS's statistical expert agrees that investment returns are necessary to correct the error.

State law is also in accord.  RCW 41.34.090 (requiring that the TRS Plan 3 statute be administered and construed to comply with IRS requirements); RCW 41.50.145(2) (correcting loss of investment returns in TRS Plan 3 accounts).  When, "due to departmental error a member of plan 3 has suffered a loss of investment return," DRS must determine and then credit the members account the amount "necessary to correct the error."  RCW 41.50.145(2).

Thus, under Takings Clause law, the law of trusts, state law (including the IRS correction procedures it incorporated), the Plan 3 statute, and the remedy of restitution, the teachers are entitled to the gains that their funds earned while they were involuntarily invested in the Commingled Trust Fund/TAP.  Accordingly, all three elements of the formula are approved.

**ORDER APPROVING FORMULA  -  10**
3:15-cv-05367-BHS

### Application of the Formula

The formula above is applied by plaintiffs' expert witness actuary John Marshall, as is explained in his declaration. The Court accepts the application of the formula by Mr. Marshall and the amounts calculated for class members set forth in the spreadsheet accompanying his declaration. The calculation shows that $137,616,369 needs to be transferred from the TRS Plan 2/3 trust fund to the teachers' TRS Plan 3 accounts. This is a substantial sum, but nearly all of it is due to DRS's extremely long delay (over 26 years) in correcting its daily interest error. Nearly all the teacher transfers occurred in 1996-98. At that time, the amount of daily interest owed to the teachers was $10,078,049 and an additional $3,127,947 for the transfer incentive payment. The remaining $124,410,373 is for the long period that the teachers' funds were invested in the Commingled Trust Fund/TAP, earning investment returns for the fund that were compounded each year at 8.92%.

Before transferring the funds, the Director shall provide in electronic form the names of the class members listed on Mr. Marshall's spreadsheet to the teachers. Currently, they are identified solely by their member identification number in the retirement system.

A final order will later be entered directing the Director to correct the accounts as provided in this order. After that order is entered, the Court will address attorney fees for class counsel and plaintiffs' award.

///
///
///
///
///
///
///
///

**ORDER APPROVING FORMULA** - 11
3:15-cv-05367-BHS

DATED this _____ day of _____, 2025.

_____
Benjamin H. Settle
United States District Judge

Presented by:

STOBAUGH & STRONG, P.C.

 /s/ David F. Stobaugh
David F. Stobaugh, WSBA #6376
Stephen K. Strong, WSBA #6299
Alexander F. Strong, WSBA #49839
126 NW Canal Street, Suite 100
Seattle, Washington  98107
(206) 622-3536
davidfstobaugh@bs-s.com
skstrong@bs-s.com
astrong@bs-s.com
*Attorneys for Plaintiffs*

**ORDER APPROVING FORMULA**  -  12
3:15-cv-05367-BHS