The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICKEY FOWLER, LEISA MAURER, and a class of similarly situated individuals,<br><br>           Plaintiffs,<br><br>    v.<br><br>TRACY GUERIN, Director of the Washington State DRS of Retirement Systems,<br><br>           Defendant. | Case No. 3:15-cv-05367-BHS<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT TO**<br><br>**(1) DETERMINE FORMULA; and**<br><br>**(2) CALCULATE DAMAGES** |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - i
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY .................................................................................. 3

    A.    Plaintiffs' Initial Motion to Approve. ........................................................ 3

    B.    Summary Judgment Order and the Court's Mandate Ruling. ..................... 5

    C.    The Parties' Joint Status Report. ................................................................ 5

    D.    Renewed Motion to Determine Injunctive Relief. ..................................... 6

III.    LEGAL STANDARD ......................................................................................... 6

IV.    ARGUMENT ...................................................................................................... 7

    A.    Plaintiffs Provide No Actual Formula and Do Not Support Their Damages Calculations. ............................................................................................... 8

    B.    Plaintiffs Provide No Competent Evidence; Defendant Moves to Strike. ........ 9

        1.    The Marshall Declaration is Not Admissible Expert Testimony. ....... 10

        2.    The Marshall Declaration Does Not Meet the Requirements of Rule 1006. ...................................................................................... 11

        3.    The Marshall Declaration is Not Admissible Lay Testimony. ............ 13

    C.    The Marshall Declaration is Confusing, Imprecise, and Inaccurate. .............. 13

        1.    The Marshall Declaration is Imprecise and Contains Fundamental Errors. ........................................................................ 13

            a.    False Computational Assumption: Plaintiffs Assume the Wrong Time Period for Daily Interest to Accrue. ............. 14

            b.    Incorrect Assumptions: Plaintiffs' Failure to Acknowledge and Address Complications in the Data. .......... 15

        2.    Comparisons Between Damage Calculations Demonstrates the Magnitude of Plaintiffs' Computational Errors. .................................. 16

        3.    Plaintiffs Cannot Blame their Deficient Marshall Declaration on DRS Data. ......................................................................................... 18

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE FORMULA FOR INJUNCTIVE RELIEF - ii
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

D.    The Court Should Require Expert Disclosures and Provide a Rule 56(d) Extension. ....................................................................................19

1.    The Court Should Require Plaintiffs to Provide a Valid Expert Disclosure before Entertaining a Motion to Resolve the Damages Formula. ...................................................................................19

2.    Relief under FRCP 56(d) is warranted. .................................20

E.    Component 3 of Plaintiffs' Proposed Formula is Incorrect as a Matter of Law and Disputed Issues of Fact Remain Regarding the Appropriate Interest Rate. ...............21

1.    Plaintiffs' Framing of Component 3 Misstates Federal Takings Law.21

2.    Plaintiffs Fail to Prove an Appropriate Prejudgment Interest Rate under *Schneider*. ..................................................................24

3.    Even if the Court Adopts Plaintiffs' Formulation of Component 3, Disputes of Material Fact Preclude Summary Judgment. ..................25

V.    CONCLUSION ...........................................................................25

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - iii
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adickes v. S.H. Kress & Co.*,
5
   398 U.S. 144 (1970) ..................................................................................................... 6

6
*Adray v. Adray-Mart, Inc.*,
   76 F.3d 984 (9th Cir. 1995) ....................................................................................... 18

7
*Air Safety, Inc. v. Roman Catholic Archbishop of Boston*,
   94 F.3d 1 (1st Cir. 1996) ........................................................................................... 11
8

9
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................................. 6, 20

10
*Auto Industries Supplier Employee Stock Ownership Plan v. Ford Motor Co.*,
   435 F. Appx 430 (6th Cir. 2011) .............................................................................. 12
11

12
*Bigelow v. RKO Radio Pictures*,
   327 U.S. 251 (1946) .................................................................................................. 18

13
*Brown v. Legal Foundation of Washington*,
   538 U.S. 216 (2003) .................................................................................................. 22
14

15
*Burlington N. Santa Fe R.R. Co. v. Assiniboine Sioux Tribes of Fort Peck Rsrv.*,
   323 F.3d 767 (9th Cir. 2003) ..................................................................................... 20

16
*Cont'l Ins. Co. v. Premier Transp. And Warehousing, Inc.*, 2019 WL 8628717 (C.D. Cal.
   Nov. 15, 2019) ............................................................................................................. 8
17

18
*Djordjevich v. Dexia Real Estate Capital Mkts.*,
   2008 WL 4850178 (D. Ariz. Nov. 7, 2008) ............................................................... 7

19
*Employers Warehousemen's Pension Plan v. Harborside San Diego Refrigerated Servs., Inc.*,
   2009 WL 10672151 (C.D. Cal. Jul. 22, 2009) ........................................................... 7
20

21
*Felder v. United States*,
   543 F.2d 657 (9th Cir. 1976) ....................................................................................... 7

22
*Fowler v. Guerin*,
23
   2024 WL 4891016 (9th Cir. Nov. 26, 2024) ........................................................... 5, 7

24
*Fowler v. Guerin*,
   899 F.3d 1112 (9th Cir. 2018) ............................................................................... 5, 23

25
*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
26
   771 F.3d 1119 (9th Cir. 2014) ..................................................................................... 6

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - iv
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Gallagher v. Holt*,
   2012 WL 3205175 (E.D. Cal. Aug. 3, 2012) ....................................................................... 13

*Goldberg v. Frerichs*,
   912 F.3d 1009 (7th Cir. 2019) ........................................................................................... 23

*Holabird v. Kagin*,
   829 F. Appx. 194 (9th Cir. 2020) ..................................................................................... 18

*Horne v. Dep't of Agriculture*,
   576 U.S. 350 (2015) ......................................................................................................... 21

*Humetric Inc. v. Gemplus SCA*,
   268 F.3d 910 (9th Cir. 2001) ............................................................................................. 9

*L.A. Printex Industries, Inc. v. Target Corp.*,
   2008 WL 11342964 (C.D. Cal. Aug. 11, 2008) ............................................................... 11

*McGlinchy v. Shall Chemical Co.*,
   845 F.2d 802 (9th Cir. 1988) ........................................................................................... 10

*Mercer Global Advisors, Inc. v. Hewitt*,
   2024 WL 5423015 (C.D. Cal. Oct. 31, 2024) ................................................................. 11

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ........................................................................................... 20

*Moore v. HCA*,
   181 Wn.2d 299 (2014) ..................................................................................................... 18

*Phillips v. Washington Legal Foundation*,
   524 U.S. 156 (1998) ................................................................................................... 22, 23

*Scherling v. Traylor Bros., Inc.*,
   476 F.3d 781 (9th Cir. 2007) ............................................................................................. 6

*Schneider v. California Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ................................................................................... 22, 23

*Schneider v. County of San Diego*,
   285 F.3d 784 (9th Cir. 2002) .................................................................................... passim

*Schneider v. County of San Diego*,
   Case No. 90-1738-H-POR, Dkt. 389 (S.D. Cal. Sept. 10, 2002) ...................................... 24

*Simmons v. USI Insurance Services, LLC*,
   721 F.Supp.3d 1333 (M.D. Fl. March 5, 2024) .................................................................. 9

*Staley v. U.S. Bank Nat'l Ass'n*,
   2013 WL 393166 (D. Idaho Jan. 31, 2013) ..................................................................... 12

*U.S. ex rel and for Use of Tenn. Valley Auth. V. Powelson*,

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - v
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

319 U.S. 266 (1943) ................................................................................................ 22

*U.S. v. Bray,*
  139 F.3d 1104 (6th Cir.1998) ........................................................................... 12

*United States v. 50 Acres of Land,*
  469 U.S. 24 (1984) ............................................................................................ 21

*United States v. Easements and Right-of-Way over a Total of 15.66 Acres of Land,*
  315 F. Supp. 3d 1353 (N.D. Ga. 2018) ............................................................ 23

*United States v. Fuller,*
  409 U.S. 488 (1973) .......................................................................................... 22

*United States v. Guirguis,*
  2018 WL 6059376 (D. Hawaii Nov. 19, 2018) ................................................ 12

*United States v. Miller,*
  317 U.S. 369 (1943) .......................................................................................... 23

*United States v. Shulick,*
  18 F.4th 91 (3d Cir. 2021) ................................................................................ 12

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
  499 U.S. 155 (1980) .......................................................................................... 22

*Wenzler & Ward Plumbing v. Sellen,*
  53 Wn.2d 96 (1958) .......................................................................................... 18

*West Virginia v. United States,*
  479 U.S. 305 (1987) .......................................................................................... 22

**Statutes**

RCW 41.32.8401 ...................................................................................................... 9

**Rules**

Fed. R. Civ. P. 26 .............................................................................................. 19, 20

Fed. R. Civ. P. 56 ...................................................................................... 1, 6, 9, 20

Fed. R. Evid. 702 .................................................................................................... 10

Federal Rule of Evidence 701 ................................................................................ 13

Local Civil Rule 7 ................................................................................................. 2, 9

Rule 1006.......................................................................................................... 11, 12

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - vi
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# I.    INTRODUCTION

Of the many things Plaintiffs' Motion to Determine Formula for Injunctive Relief ("Motion") lacks, the most obvious is an actual formula. Despite seeking summary adjudication of a formula, Plaintiffs never actually supply the mathematical formula(s) used to compute their supposed damages. The Motion describes generally three different components of damages (*id.* at 11:24-12:4); argues about procedural history (*id*. at 6:17-8:20); asserts that liability has been established, which is not the subject matter of the Motion (*id*. at 8:21-11:22); describes alleged fallacies of previous positions taken by the Director of the Department of Retirement Systems ("DRS") (*id*. at 8:1-20); and argues caselaw regarding prejudgment interest (*id*. at 15:24-21:11, 23:17-25:14). Nowhere does the Motion describe, in mathematical terms or otherwise, the purported "formula" that Plaintiffs have used to determine their alleged damages.

The declarations supporting the Motion do not help. The Declaration of David F. Stobaugh (Dkt. 185), offers counsel's second-hand descriptions of the DRS system (*id*. ¶¶4-7), takes issue with a prior DRS declaration, and endorses alleged computations contained in other interrogatory responses (*id.* ¶10). The Declaration of John D. Marshall ("Marshall"), Dkt. 186 ("Marshall Declaration"), says it "explains a calculation" (*id.* ¶34) but does not provide any real explanation, much less an actual formula to determine damages. The Motion attaches a 395-page PDF spreadsheet with no backup that supposedly calculates Plaintiffs' damages. In short, Plaintiffs' Motion is a proverbial black box asserting a damage figure.

The Motion also lacks supporting evidence. Plaintiffs seek to secure summary judgment for both the manner of computing damages (i.e., the formula) and actual damages. To secure summary judgment, Plaintiffs must submit admissible evidence. *See* Fed. R. Civ. P. 56(c)(4) (a declaration used to support a motion for summary judgment must "set out facts that would be admissible in evidence"). The declarations supporting the Motion fail to disclose the actual formula, the computer programs/native spreadsheets that calculate damages, or any other admissible evidence. And, while Marshall states he "…expended considerable effort to ensure

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 1
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

that the calculation is as accurate as possible," (Marshall Decl. ¶4), he provides no support for these computations, other than the PDF spreadsheet with no formulas. Marshall likely did not create any spreadsheets and/or computer programs generating Plaintiffs' numbers, because he did not do so in 2021. *See* Dkt. 135 at 7:8-9. Instead, a non-declarant that worked for Marshall did so. *Id*. While it is understandable why Marshall cannot explain these computations, his declaration does not constitute competent evidence. Pursuant to Local Civil Rule 7(g), the Court should strike paragraphs 12-42 of the Marshall Declaration. Simply put, the declarations supporting the Motion are not evidence of anything. Still less can they justify $137.4 million in alleged damages—*which is nearly triple Plaintiffs' prior damage request. See* Dkt. 114 ¶15.

Third, Plaintiffs' calculations are wildly inaccurate. Plaintiffs describe a few of Marshall's underlying assumptions, but we know those assumptions are unreasonable and wrong. At a minimum, they raise genuine disputes of material fact. Plaintiffs also fail to provide a comprehensive explanation of whatever formula(s) they are proposing. Unlike Plaintiffs, DRS has described, in recent discovery responses, exactly how damages should be computed for the first and second components. DRS presents a glossary of the terms, a step-by-step calculation, and a native Excel spreadsheet showing computations for two class members. DRS's actual formula (which it gave to Plaintiffs) and actual computation examples (which it provided in native format) calculate damages significantly lower than Marshall's PDF spreadsheet would suggest.

Fourth, the Motion is premature and a FRCP 56(d) continuance is necessary. Contrary to Plaintiffs' representations, they have not provided sufficient information to explain, much less support, their calculations. Plaintiffs contend that because Plaintiffs produced *some* information regarding Marshall previously, and since DRS deposed Marshall three years ago, they have somehow met their discovery obligations. Not so. First, despite Plaintiffs' vague, unsupported assertion that "DRS has conducted comprehensive and thorough discovery of" Marshall, there is no evidence that Plaintiffs ever produced the information that DRS requires.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 2
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Second, even if such information had been provided in 2021, the Marshall Declaration is a completely different declaration, using a different/modified formula, and reaches completely different damage numbers. Plaintiffs' 2021 damage request was for $46.6 million; their current damage request is for $137.6 million. *Compare* Dkt. 114 ¶15 *with* Marshall Decl. ¶41. Whatever discovery did (or did not) previously occur has little bearing on the Marshall Declaration or its supposed damage computation.

There is an orderly way to proceed. In response to Plaintiffs' January 31, 2025 discovery requests, DRS supplied its own formula and specific examples of damage computations. Marshall says that he has also created a formula and computations, though apparently not personally. Thus, Plaintiffs must have some actual support (native spreadsheets, computer codes, work papers, etc.) supporting their calculations.[1] After denying the Motion, the Court should order disclosure of expert reports, together with all information Rule 26 requires for an expert disclosure, within 60 days of the denial. Rebuttal reports with mandated disclosures should be due 45 days after that date. Depositions should take place within 30 days of rebuttal. Finally, if a hearing is necessary, the Court should schedule a two-day trial to consider the experts and determine damages.

## II.    PROCEDURAL HISTORY

### A.    Plaintiffs' Initial Motion to Approve.

On April 2, 2021, Plaintiffs filed their initial Motion to Approve Formula to Correct Class Members' Accounts, Dkt. 111 ("First Formula Motion"), in which they presented and argued for an actual computation of damages. In support of their damage claims, Plaintiffs submitted, among other things, the Declaration of John Marshall, Dkt. 114 ("2021 Marshall

---

[1] DRS has sought this information via subpoena to Marshall during the pendency of this Motion. While Plaintiffs' counsel agreed to accept service, their documents are not yet available. *See* Declaration of Philip M. Guess In Opposition to Plaintiffs' Motion for Summary Judgment Motion ("Guess Decl.") ¶6.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 3
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Declaration"), in which he provided a "preliminary total" of $46,618,420 in damages. *Id*. ¶15. Neither the First Formula Motion nor the 2021 Marshall Declaration referenced any actual mathematical formula or provided any material supporting its computation. *See* Dkt. 111 & 114. Instead, the only support for these supposed computations was an 8-page narrative declaration with surface-level descriptions.

DRS's Opposition to First Formula Motion ("DRS First Opposition") showed that:

- Despite Marshall conceding in deposition he was providing an expert opinion, Plaintiffs never disclosed him as an expert. Dkt. 135 at 6:21-7:7; *see also* Dkt. 144 at 6:18-20.

- Marshall admitted that: (i) he had no personal knowledge regarding the case; (ii) he relied exclusively on information Plaintiffs' counsel provided to prepare his declaration; (iii) Plaintiffs' counsel instructed him to make certain assumptions regarding the computations; and (iv) he did not personally prepare the spreadsheets and computer programs which generated the supposed damages. Instead, his colleague did 98 percent of the work on the formula and computations. Dkt. 135 at 6:21-7:17; *see also* Dkt. 144 at 7:10-16.

- In response to DRS's subpoena, Marshall failed to produce all the formulas Craig Neumon (Marshall's colleague who made the computations) used and many of the files which Plaintiffs did produce were never accessible and are only currently known by Mr. Neuman. Dkt. 135 at 7:18-25, 19:5-11; Dkt. 138 at ¶¶ 10–11.

As DRS's First Opposition demonstrated, Plaintiffs failed to present an actual formula and failed to provide any competent evidence. *Id.* at 9:11–17:24, 18:18–19:11.

Unable to support the initial relief requested, Plaintiffs significantly pared their demand in their reply:

> The teachers' motion *does not seek a determination of the amounts that should be transferred for the class or any teacher*. The final calculation will only be made after the formula is approved and the calculation details, such as account for some members' anomalous date and some missing transaction dates, will be addressed by the parties at that time.

Dkt. 140 at 3:22-25 (emphasis added). In other words, Plaintiffs' First Formula Motion did not constitute an attempt to compute damages. Rather, Plaintiffs sought some type of general

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 4
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

approval of categories of damages and/or formulas for computing damage, even though the purported formula(s) was either not disclosed or inaccessible.

**B.      Summary Judgment Order and the Court's Mandate Ruling.**

Before ruling on the First Formula Motion, the Court granted DRS's motion for summary judgement on its statute of limitation defense. Dkts. 153, 171. On November 26, 2024, the Ninth Circuit Court of Appeals reversed this Court's summary judgment ruling, finding it had exceeded the scope of the mandate in *Fowler v. Guerin,* 899 F.3d 1112 (9th Cir. 2018) ("*Fowler I*"). *See Fowler v. Guerin*, 2024 WL 4891016 (9th Cir. Nov. 26, 2024) ("*Fowler II*"). The Ninth Circuit then stated "the only remaining issue for the district court to resolve is whether to approve the Teachers' proposed formula to correct the Teachers' accounts." *Id*. at *3. The Ninth Circuit provided no direction regarding necessary discovery, how the Court should assess Plaintiffs' proposals, and what lay or expert discovery/testimony would be required for the Court to make its necessary determinations.

On January 15, 2025, the Ninth Circuit issued its mandate remanding the case. Dkt. 180.

**C.      The Parties' Joint Status Report.**

This Court directed counsel to file, within 30 days of the Ninth Circuit's mandate, a Joint Status Report ("JSR") outlining each side's proposed approach to the case, including "further efforts to agree on the formula," "the need for supplemental briefing and/or a hearing," and "any other foreseeable impediments to resolve this matter." Dkt. 178. As the parties could not reach agreement, they submitted separate sections of the JSR. Plaintiffs stated they would update and review their motion to approve the formula for injunctive relief. Dkt. 183 at 2:6-7. Defendant noted the disagreements regarding expert discovery and disclosures, proposing an expert discovery schedule and a November 15, 2025 hearing date (if necessary). *Id.* at 3:17-5:10.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 5
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

D.      **Renewed Motion to Determine Injunctive Relief.**

On February 21, 2025, Plaintiffs filed the current Motion, Dkt. 184, in which they seek approval of "the formula for an injunction requiring [DRS] to correct the accounting of funds held in the Teachers Retirement System (TRS)…." *Id*. at 1:2-5. The Motion states "DRS conducted comprehensive and thorough discovery of Plaintiffs' expert actuary, John Marshall, in both state and federal court." *Id*. at 7:5-7. Plaintiffs ignore the fact that the 2021 "formula" for which they had previously sought approval (if it could even be considered a formula) has substantively changed in the last four years. Plaintiffs now seek damages nearly three times higher than in their First Formula Motion. Despite this fact, Plaintiffs contend the First Formula Motion somehow supports their calculations.

Plaintiffs, in essence, seek to force DRS to respond to an undisclosed and unsupported expert opinion, for the first time, on a motion for summary judgment. Not only does this attempt fail on its merits; it highlights the need for genuine expert discovery, permitting the parties to thoroughly evaluate each other's proposal. Expert discovery will also provide this Court with a sufficient record to determine disputed facts about the formulae, assumptions, and details underlying the parties' calculations.

### III.      LEGAL STANDARD

Plaintiffs seek a pretrial dispositive ruling on damages. The Motion is subject to the summary judgment standard. Summary judgment is appropriate only if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable trier of fact could resolve the issue in the non-movant's favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). The court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party." *Scherling v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 6
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

(1986)). If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

## IV.    ARGUMENT

The Ninth Circuit's mandate directs this Court to "resolve...*whether* to approve the Teachers' proposed formula to correct the Teachers' account." *Fowler II*, 2024 WL 4891016, at *3 (emphasis added). The Ninth Circuit did not direct the Court to approve Plaintiffs' formula or to accept Plaintiffs' calculation.

In their Motion, Plaintiffs propose three damage components: "(1) daily interest omitted to the time of transfer" ("Component 1"); "(2) an increase in the transfer incentive payment" ("Component 2"); and (3) "the returns that the teachers' funds earned while sitting in the State's Commingled Trust Fund since the date of transfer to Plan 3." ("Component 3").[2] Mot. at 11:24-12:4. Plaintiffs' Motion goes beyond seeking summary judgment on conceptual damage components; it asks the Court to make a pretrial determination of Plaintiffs' calculation of damages under each component. *See id.* at 21:12-23:16.

Regarding damage Component 1 and damage Component 2, Plaintiffs' calculation requires intricate mathematical computations, presenting a classic issue of fact. *See Felder v. United States*, 543 F.2d 657, 663 (9th Cir. 1976) ("The calculation of damages . . . is a question of fact."). District courts in this circuit routinely deny motions for summary judgment where the parties dispute damage calculations. *See Djordjevich v. Dexia Real Estate Capital Mkts.*, 2008 WL 4850178, at *3 (D. Ariz. Nov. 7, 2008) ("Because the parties genuine dispute the correct damage calculation, summary judgment is not appropriate."); *Red Rock Commc'n, Inc. v. Am. Telecasting, Inc.*, 2005 WL 8161949, at *3 (D. Nev. 2005) ("[non-moving party] has

---

[2] In this brief, DRS uses "Component 3" as a shorthand to describe the third component of the formula to measure Plaintiffs' damages. For the reasons discussed in Section IV.E below, DRS disputes Plaintiffs' characterization of Component 3 and takes the position that Component 3 should measure prejudgment interest.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 7
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

raised sufficient issues of material fact regarding the proper calculation of excess contributions and interest thereon to preclude summary judgment."); *Employers Warehousemen's Pension Plan v. Harborside San Diego Refrigerated Servs., Inc.*, 2009 WL 10672151, at *6 (C.D. Cal. Jul. 22, 2009) (denying motion for summary judgment based on declaration submitted by non-moving party identifying errors in moving party's calculation of damages); *Cont'l Ins. Co. v. Premier Transp. And Warehousing, Inc.*, 2019 WL 8628717, at *11 (C.D. Cal. Nov. 15, 2019) ("Where the amount of damages is disputed and the parties have each introduced evidence as to a conflicting damages calculation, resolution is not appropriate at summary judgment.").

Component 3 presents a mixed question of law and fact. Initially, the Court must determine the legal standard governing Plaintiffs' prejudgment interest claim, which DRS contends is set forth in *Schneider v. County of San Diego*, 285 F.3d 784 (9th Cir. 2002). *See* Section IV.E *infra*. Once the Court makes that determination, it must then determine the "reasonable rate of interest for just compensation," which again requires "a finding of fact." *Schneider*, 285 F.3d at 790.

## A.    Plaintiffs Provide No Actual Formula and Do Not Support Their Damages Calculations.

There is a substantial difference between seeking approval of a methodology for calculating damages, asking for approval of the underlying formula, and seeking summary determination of actual damages. Here, Plaintiffs try to do all three in misleading fashion. First, they describe three general damage components (Mot. at 11:24-12:4); then, they ask the Court to adopt an undisclosed formula and unsupported computations (*id.* at 21:12-23:16). DRS does not dispute there are three components to damages; indeed, DRS identifies the same components in its discovery responses (with a significant disagreement as to Component 3, discussed below in Section IV.E). *See* Guess Decl., Ex. A. However, the actual formulas for computing damages—and specific damage amounts—raise issues of fact. *Marsu v. B.V. Walt Disney Co.*, 185 F.3d 932, 938 (9th Cir. 1999) ("It is within the sound discretion of the trier of

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 8
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    fact to select the formula most appropriate to compensate the injured party.").

2         An instructive example is lost profits. Determining lost profits includes many variables,

3    such as the duration a party may continue to receive profits (e.g., 5 or 10 years), or whether a

4    specific discount rate should be factored into the calculations; disputes regarding these variables

5    are properly left to the fact finder. *Simmons v. USI Insurance Services, LLC*, 721 F.Supp.3d

6    1333, 1347 (M.D. Fl. March 5, 2024) (disagreement involving the 10-year period and the proper

7    attrition rate "goes to the weight" of the testimony "and can be made in cross examination and

8    closing argument at trial.") Even if litigants agree on the necessary components to calculate

9    damages, the inputs and variables used are questions of fact, developed through expert

10   testimony, and determined by the fact finder. *Humetric Inc. v. Gemplus SCA*, 268 F.3d 910, 919

11   (9th Cir. 2001) ("Authority to determine the victor in such a 'battle of expert witnesses' is

12   properly reposed in the jury…. [T]he assumptions underlying the experts' [damages] analysis,

13   criticisms of an expert's method of calculation [are] a matter for the [fact finder's] consideration

14   in weighing that evidence. It is for the trier of fact to accept or reject this evidence….").

15         Here, DRS agrees the measure of damages will involve three components.  <u>Component</u>

16   <u>1</u> is the difference between the interest credited to the Class Members and the revised interest

17   to be credited to the Class Members accounting for daily interest; <u>Component 2</u> is the difference

18   between the additional payment credited to the Class Members and the revised additional

19   payment to be credited to the Class Members under RCW 41.32.8401; and <u>Component 3</u> is the

20   interest calculation applicable to the prior components. But within those components, as in any

21   damage calculation, there are necessary inputs, assumptions, and variables that all present

22   questions of fact and must be supported by competent evidence.

23   **B.    Plaintiffs Provide No Competent Evidence; Defendant Moves to Strike.**

24         "An affidavit or declaration used to support or oppose a motion must be made on

25   personal knowledge, *set out facts that would be admissible in evidence*, and show that the affiant

26   or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 9
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

added). Nothing about the Marshall Declaration is admissible for anything. Pursuant to Local

Civil Rule 7(g), the Court should strike paragraphs 12-42 of the Marshall Declaration for the

following reasons:

**1.      The Marshall Declaration is Not Admissible Expert Testimony.**

Expert testimony is admissible if it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[I]n the context of a motion for summary judgment, an expert must

demonstrate his competence or back up his opinion with specific facts." *McGlinchy v. Shall*

*Chemical Co.*, 845 F.2d 802, 806 (9th Cir. 1988).

The Marshall Declaration does not meet the Rule 702 criteria. It starts by stating

Marshall's qualifications and describing the declaration's purpose. Marshall Decl. ¶¶1-11. It

then provides general descriptions of Components 1, 2, and 3 (*id*. ¶¶12-20), before describing

some information DRS provided and how Marshall interprets that information (*id*. ¶21-32). The

Marshall Declaration contains a section titled "Application of the Formula," which has two

critical flaws. First, Marshall does not provide any formula, in mathematical terms or otherwise.

Second, the declaration does not contain an actual application of any formula, but rather a

scattershot description of certain parts of what might be a formula (*see generally id.* ¶¶33-42).

Marshall then makes the following admission:

> The calculation is a summary of the voluminous records under Evidence Rule 1006 for over 26,000 class members. The calculation could be done by hand, person-by-person, pay-period-by-pay-period, but that calculation would not be feasible. *And so we use a computer to do the same calculation.* My understanding is that because my declaration just explains a calculation no separate expert report is needed.

*Id.* ¶34 (emphasis added). Marshall submits a separate document containing a 395-page

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 10
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

cursory spreadsheet, in PDF format (i.e., no formulas or calculations), summarily declaring Plaintiffs are entitled to $137.6 million, nearly three times the amount in their prior submission. No report. No formula. Nothing that explains the computation. No computer programs used to generate the data. Just Marshall saying, in essence, "here is what you owe." This is not a valid expert opinion. *See Mercer Global Advisors, Inc. v. Hewitt*, 2024 WL 5423015, at *8 (C.D. Cal. Oct. 31, 2024) ("[T]he Court finds that [expert's] opinion on damages must be excluded because there is no reliable method expressed for applying his calculations at trial in a way that would be helpful to the jury.").

## 2.    The Marshall Declaration Does Not Meet the Requirements of Rule 1006.

Plaintiffs argue Marshall's unsupported 395-page PDF is "a summary under Evidence Rule 1006 of voluminous records for the entire time that the class members were in TRS Plan 2." Mot. at 22:2-4. Rule 1006 states: "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." For several reasons, the Marshall Declaration does not meet Rule 1006's requirements.

First, to satisfy Rule 1006, "a party seeking to use a summary under Rule 1006 must identify its exhibit as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be reviewed." *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996). "Common sense dictates that this guaranteed access [to the underlying documents], designed to give the opponent the ability to check the summary's accuracy and prepare for cross-examination, . . . must include unequivocal notice of the other party's intent to invoke Rule 1006." *Id.*; *see also L.A. Printex Industries, Inc. v. Target Corp.*, 2008 WL 11342964, at *2 (C.D. Cal. Aug. 11, 2008) ("Rule 1006 requires that the offering party identify an exhibit as a summary and identify the documents that support the summary"). But Marshall presents 395 pages of purported damages, without any support or information necessary to understand the calculations.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 11
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    Second, Rule 1006 requires the party offering a summary to make the materials it is

2    summarizing available to the other parties at a reasonable time and place. Although Plaintiffs

3    claim Marshall is just summarizing DRS's data, they have failed to disclose the formulas,

4    assumptions, and calculations his associate developed and used to manipulate and aggregate

5    the data. This, too, requires rejection.

6    Third, the Marshall Declaration goes well beyond a summary. Instead, it presents

7    narrative testimony, some scattered assumptions, inferences, and opinions about the three

8    conceptual components of Plaintiffs' proposed but undisclosed formula. Then it seeks to use

9    those assumptions, inferences, and opinions to calculate damages. Rule 1006 forbids this: "If a

10   purported summary includes assumptions and inferences that represent [the witness's] opinion,

11   rather than the underlying information, it is actually expert testimony subject to the rules

12   governing opinion testimony." *United States v. Shulick*, 18 F.4th 91, 106 (3d Cir. 2021) (internal

13   quotations omitted); *see also Auto Industries Supplier Employee Stock Ownership Plan v. Ford*

14   *Motor Co.*, 435 F. Appx 430, 452 (6th Cir. 2011) ("[A]lthough [witness] summarized data and

15   calculations, . . . his report was more than just a summary of data under Fed. R. Evid. 1006

16   because his report also included data manipulations, adjustments, and calculations using the

17   data presented, and therefore subject to rules governing opinion testimony and expert

18   testimony.").

19   Fourth, to be admissible, "'a summary document must be accurate and nonprejudicial.'"

20   *Staley v. U.S. Bank Nat'l Ass'n*, 2013 WL 393166, at \*5 (D. Idaho Jan. 31, 2013) (quoting *U.S.*

21   *v. Bray*, 139 F.3d 1104, 1110 (6th Cir.1998)); *United States v. Guirguis*, 2018 WL 6059376, at

22   \*3 (D. Hawaii Nov. 19, 2018) ("To be admissible as substantive evidence under Rule 1006, the

23   chart must summarize the underlying materials 'accurately, correctly, and in a nonmisleading

24   manner.'") (quoting *Bray*, 139 F.3d at 1110). The Marshall Declaration fails this test, too.

25   Inaccuracies preclude its use under Rule 1006.

26

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 12
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    **3.    The Marshall Declaration is Not Admissible Lay Testimony.**

2         Despite Marshall being identified as "plaintiffs' expert witness actuary," Motion at 11:2,

3    the Marshall Declaration suggests his testimony may qualify as lay witness testimony. *See*

4    Marshall Decl. ¶34 ("My understanding is that because my testimony just explains a calculation

5    no separate expert report is needed."). To the extent Plaintiffs take this position, Marshall's

6    declaration should be excluded because it is improper lay witness testimony under Federal Rule

7    of Evidence 701. A witness may not provide lay opinion testimony when that witness (1) was

8    specially retained to review a case to provide testimony, (2) has no personal knowledge

9    regarding the facts of a case separate from that review, and (3) is testifying on the subject for

10   which they have specialized education, training and experience. *See, e.g.*, *Gallagher v. Holt*,

11   2012 WL 3205175, at \*14 (E.D. Cal. Aug. 3, 2012) (forensic accountant will unavoidably

12   render opinions, observations, conclusions or statements based on his specialized education,

13   training and experience, and his opinions were not based on personal knowledge). Here,

14   Plaintiffs specially retained Marshall to testify in this case. Marshall Decl. ¶10. Marshall

15   previously admitted he has no personal knowledge regarding the case, and what facts he does

16   know comes entirely from Plaintiffs' counsel. *See* Dkt. 144 at 5:5-8, 7:10-16; Dkt. 135 at 6:21-

17   7:17. Thus, there is no aspect of his testimony that could meet the definition of lay opinion.

18   **C.    The Marshall Declaration is Confusing, Imprecise, and Inaccurate.**

19        **1.    The Marshall Declaration is Imprecise and Contains Fundamental Errors.**

20        While Plaintiffs claim they presented a "formula," they failed to provide any actual

21   formula(s), expressed in mathematical terms or otherwise. Nor do they explain how it applies

22   or the assumptions it makes. Upon receiving the new and undisclosed expert opinion contained

23   in the Marshall Declaration, DRS served a subpoena on Marshall to secure the information

24   required in the initial disclosure. *See infra* Section IV.D.2. Without this information, it is

25   impossible to evaluate the viability of Plaintiffs' supposed formula(s) and its damages amounts.

26        At best, the Marshall Declaration offers three general components to measure damage

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 13
Case No. 3:15-CV-05367-BHS

(Component 1, Component 2, and Component 3), and provides some explanation for how certain inputs and variables can be determined. Yet, these explanations demonstrate the extensive factual disputes preventing summary judgment. The following subsections provide two discrete examples.

<strong>a.    False Computational Assumption: Plaintiffs Assume the Wrong Time Period for Daily Interest to Accrue.</strong>

For Component 1, consider the "from date" used to calculate when daily interest begins to accrue. Plaintiffs' calculation uses "the end of the earning period as the date when daily interest begins to accrue." Marshall Decl. ¶30.[3] This proposed measure of the "from date" for calculating the accrual of interest significantly overstates the Class Members' daily interest. Declaration of Sarah Blocki ("Blocki Decl.") ¶¶ 17–19. In reality, the end of the earnings period does not reflect the date when the contribution is deposited with the Washington State Investment Board ("WSIB") for investment. *Id*. ¶17a–c. This is because most teachers are paid over twelve months but teach over nine months. *Id.* ¶17d. To account for this, a complex formula is applied so that portions of compensation earned during a particular earnings period are disbursed (and made available for investment) in subsequent months. *Id.*

Take, for example, a sample class member's actual paycheck for November. *Id.* ¶17d–e, Exhibit C. Retirement contributions associated with this paycheck's compensation were allocated over ***three*** different earnings periods: September 2014, October 2014 and November 2014. *Id*. Under Plaintiffs' proposal, the contribution tied to the September 2014 earnings period would begin to accrue interest beginning September 30, the contribution tied to the October 2014 earnings period would begin to accrue interest beginning October 31, and the contribution tied to the November 2014 earnings period would begin to accrue interest on November 30. *Id.* But the contribution itself would not be deposited until WSIB receives the contribution in

---

[3] This measure of the "from date" to calculate interest is a significant departure from Marshall's prior proposal in 2021 that interest should accrue from the date of deposit, *see* Dkt. 114 ¶6.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 14
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

December (shortly after the November paycheck is issued and the Class Member receives compensation) and invests it. *Id.* As a result, Plaintiffs' proposal of tying the "from date" to the earnings period would allow portions of that contribution to accrue interest between 30 and 61 days before the contribution is deposited. *Id.* And over the course of a Class Member's career, these multiple months of windfall interest will drastically distort the proper amount of interest calculated for Component 1. Component 2 will be similarly distorted.

These are not the Marshall Declaration's only errors. *See, e.g.*, *id.* ¶17f–g (discussing payment from National Board for Professional Teaching Standards); *id.* ¶20 (discussing leaps years in interest rate calculation); *id.* ¶24 (discussing start date for interest for third component); *id.* ¶25 (discussing end date for interest for third component for Class Members who have taken distributions). Given these issues, it is unsurprising Plaintiffs reach the wrong conclusions.

### b.    Incorrect Assumptions: Plaintiffs' Failure to Acknowledge and Address Complications in the Data.

Another example is Plaintiffs' incorrect assumption regarding the data DRS provided. DRS gave Plaintiffs data it used for business purposes. *Id.* ¶28. Several aspects of DRS's data require special consideration before any methodology can be applied across the class, or the calculations will be wrong. *Id.* ¶29. Indeed, Plaintiffs previously admitted that special handling of the data will need to be "addressed by the parties." Dkt. 140 at 3:23-25.

DRS identified the data of 389 Class Members as "anomalous." Blocki Decl. ¶29. Plaintiffs incorrectly state that "DRS later corrected the data with anomalies and provided the required information for these class members. We have received DRS's notes regarding these class members, accepted the corrections made by DRS, and included class members with anomalous data in the calculation." Marshall Decl. ¶25. DRS made no "corrections." Blocki Decl. ¶29, Exhibit D. When DRS provided its data, DRS informed Plaintiffs that the data was being provided as extracted from the database, and that certain rows (representing individual transactions) had been highlighted because they would require special handling and proposals

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 15
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

by the parties. *Id.* Rather than "correcting" data, DRS simply flagged the data so Plaintiffs would be aware of the issue, which DRS took pains to describe. *Id.* But Plaintiffs incorrectly assumed the data could be used as is and plugged into whatever undisclosed formula(s) Plaintiffs believe should be used, and the resulting calculations would be accurate. But the results cannot be accurate because of the multiple different types of anomalies that exist.

One such anomaly is the "Conversion Error." *Id.* ¶29b. In 1982, when DRS started to use its current database, older data had to be converted when DRS moved the data from the prior system into the new database. This conversion process resulted in some transaction entries labeled "Conversion Errors," often for many thousands of dollars. *Id.* When "Conversion Errors" were spotted, code was written to reverse the "Conversion Error" and applied a year or more after the "Conversion Error" had occurred. *Id.* Each reversal appears in an affected Class Member's account as "Conversion Correction," with both the "Conversion Error" and "Conversion Correction" appearing as if they were ordinary contributions and reversals. *Id.* If these amounts are used as typical contributions and reversals, they will distort the results if the initial (large) positive entry is allowed to accrue interest until the time it is reversed. *Id.* ¶29b–c. Marshall does not mention any special handling of the data in such cases or how he sought to prevent distortions in his methodology.

Again, these are not the Marshall Declaration's only errors. *See, e.g.*, *id.* ¶30 (discussing negative transactions); *id.* ¶31 (discussing negative transactions without associated earnings periods); *id.* ¶32 (discussing data in form MM/00/YYYY). Given these issues, it is unsurprising Plaintiffs reach the wrong conclusions.

## 2. Comparisons Between Damage Calculations Demonstrates the Magnitude of Plaintiffs' Computational Errors.

The Court need not consider the Marshall Declaration's mistakes in a vacuum. The First Formula Motion and the 2021 Marshall Declaration provided damage computations that can be compared to those presented now. DRS has also provided its own formula and its own examples

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 16
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

of damage computations for two class members. *See* Guess Decl. Ex. A. A comparison of Plaintiffs' 2021 damage calculation, Plaintiffs' 2025 damage calculation, and DRS's calculation provides significant insight into how Plaintiffs' computations have changed over time.

The computations for Components 1 and 2 should *not* change from one calculation to another based solely on the passage of time. These calculations are keyed to unchanging events that occurred in the past, i.e., "historical facts." It is only Component 3, involving prejudgment interest, that should change with the passage of time. If you examine the damage calculation for a specific class member, for example Member 864675, the damage numbers for Components 1 and 2 are significantly different:

**Member 864675**

|  | Marshall 2021 | Marshall 2025 | DRS |
|---|---|---|---|
| Component 1 | $27.94 | $47.19 | $28.09 |
| Component 2 | $13.66 | $1.02 | $0.32 |
| Total | $41.60 | $48.21 | $28.41 |

Blocki Decl. ¶ 35.

Despite using the same general "Components," Plaintiffs' proposed 2021 and 2025 damage computations swing wildly. Again, Components 1 and 2 are not supposed to swing over time. DRS's damage computation, which is supported by an actual formula and precise calculation, is approximately 70 precent of Plaintiffs' 2021 number and 60 percent of Plaintiffs' 2025 number. DRS has no way knowing, much less examining, why Plaintiffs' damages have varied, because Plaintiffs have not provided any significant back up information regarding these computations.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 17
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**3.      Plaintiffs Cannot Blame their Deficient Marshall Declaration on DRS Data.**

Plaintiffs argue that any of DRS's disagreements with Plaintiffs application of the formula should be disregarded because they are "likely based on deficiencies in [the Director's] own records." Mot. at 26:1-3. This is wrong. DRS's records contain all information needed for DRS's normal business activities. Blocki Decl. ¶9a–f. DRS is under no obligation to craft a database retaining data that would be needless for its business activities, as if DRS could have known that over 20 years later additional information could be relevant to litigation that DRS did not foresee.

Moreover, the cases Plaintiffs cite do not stand for the proposition that DRS may not contest Plaintiffs simply because "the fact of damage has been established." Mot. at 26:3-4. Each citation[4] relies on a single line from *Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946). While the Court did say "that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created," (*id*. at 265), this was because the underlying "tortious acts" themselves "precluded ascertainment of the amount of damages more precisely." *Id*. at 264. As the Court explained, "[i]t would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain." *Id*. at 264-265. Thus, the Court drew a direct connection between the underlying tortious act and how that tortious act itself created the uncertainty. *Id*. at 265 ("Failure to apply it would mean that the more grievous the wrong done, the less likelihood there would be a recovery.") Here, there is no allegation that Plaintiffs' claim of an alleged taking, or DRS's response to that claim, caused the alleged gaps in DRS's records.[5] *Cf. id.* (discussing an example regarding "more accurate

---

[4] *Adray v. Adray-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995); *Wenzler & Ward Plumbing v. Sellen*, 53 Wn.2d 96, 98-100 (1958); *Moore v. HCA*, 181 Wn.2d 299, 314 (2014).

[5] The remaining cases are inapposite, and do not undermine the DRS's argument that there are significant disputed facts that prevent summary judgment. *Kissell Co. v. Gressley*, 591 F.2d 47 (9th Cir. 1979) (post-trial appeal where Plaintiffs damages testimony went unrebutted); *Holabird v. Kagin*, 829 F. Appx. 194 (9th Cir. 2020) (unpublished) (post-trial appeal where Defendant made "no argument regarding the testimony of Holabird's expert."). Neither case

---

1    data which the wrongdoer's misconduct has rendered unavailable.")

2           The Court should reject Plaintiffs' attempts to blame the inaccuracies and incorrect

3    assumptions in their undisclosed formula on alleged "deficiencies" in DRS's data.

4    **D.    The Court Should Require Expert Disclosures and Provide a Rule 56(d) Extension.**

5           **1.    The Court Should Require Plaintiffs to Provide a Valid Expert Disclosure
            before Entertaining a Motion to Resolve the Damages Formula.**

7           Rule 26 is unambiguous:

8           (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated
            or ordered by the court, this disclosure must be accompanied by a written
9           report—prepared and signed by the witness—*if the witness is one retained or
            specially employed to provide expert testimony* in the case or one whose duties
10          as the party's employee regularly involve giving expert testimony. The report
            must contain:

11
            (i) a *complete statement of all opinions the witness* will express and the *basis
12          and reasons for them*;

13          (ii) the *facts or data considered by the witness* in forming them;

14          (iii) any exhibits that will be used to summarize or support them[.]

15   Fed. R. Civ. P. 26(a)(2)(B)(i)–(iii) (emphasis added and in original). Plaintiffs do not appear to

16   have done any proper expert disclosure in this case, much less one for the new 2025 expert

17   opinion (i.e., the Marshall Declaration).

18          Marshall not only failed to provide his alleged formula(s); he did not provide "a

19   complete statement of all opinions" or "the facts or data considered by the witness." For

20   example, Marshall failed to produce all the material considered as well as the native

21   spreadsheets, including any computer programs or written calculations used to compute the new

22   2025 damages. Instead, the Motion undertakes two separate tactics: first, it makes vague

23   reference to prior discovery (*see, e.g.*, Motion at 6:20-21 ("DRS had already received extensive

24   discovery and taken the deposition of plaintiffs' actuary expert")); second, it makes vague and

25   ─────────────────

26   involved questions of disputed fact related to a damages analysis, and whether they should be
     left to the fact finder to determine.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 19
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

general cross-references to other material in the record. Marshall Decl. ¶34. Neither approach is availing for the same reason. Even if Plaintiffs had provided significant material supporting Marshall's prior opinions (and they did not), that would have very little bearing on Marshall's 2025 computations. These new computations use a different methodology, make different assumptions, and reach a damage computation *that is nearly three times greater than his prior computation*. *Compare* Dkt. 114 ¶¶15-16 *with* Marshall Decl. ¶¶ 39-42.

Plaintiffs can significantly expedite this case by making a proper Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii) expert disclosure (as will DRS) and engaging in meaningful expert discovery so that damages can be stipulated to or determined by hearing.

### 2.    Relief under FRCP 56(d) is warranted.

Where a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). This brief, together with the Declaration of Philip M. Guess, establishes the basis for this continuance. Guess Decl. ¶6-9. DRS received Marshall's 2025 unsupported computations on February 21, 2025. *See* Marshall Decl. On March 5, 2025, DRS provided Plaintiffs' counsel a subpoena seeking information regarding Marshall's Declaration. Guess Decl. ¶4, Exhibit C. On March 11, 2025, Plaintiffs' counsel agreed to accept service on Marshall's behalf. *Id.* ¶5, Exhibit D.

The vast majority of information DRS requested is required under Fed. R. Civ. P. 26(a)(2)(B)(i)–(iii). Guess Decl. ¶6. Although DRS served a similar subpoena regarding a prior Marshall declaration, it could not have submitted such a subpoena regarding Marshall's 2025 damage computation because it was not aware of these computations until February 21, 2025. A continuance should be granted. *Burlington N. Santa Fe R.R. Co. v. Assiniboine Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773-74 (9th Cir. 2003) ("continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 20
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

non-moving party has not diligently pursued discovery of evidence."); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (explaining that although the rule "facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'") (quoting *Anderson*, 477 U.S. at 250).

E.    **Component 3 of Plaintiffs' Proposed Formula is Incorrect as a Matter of Law and Disputed Issues of Fact Remain Regarding the Appropriate Interest Rate.**

1.    **Plaintiffs' Framing of Component 3 Misstates Federal Takings Law.**

Plaintiffs frame Component 3 as "the returns that the teachers' funds earned while sitting in the State's Commingled Trust Funds since the date of transfer to Plan 3." Mot. at 12:2-4. In other words, Plaintiffs assert that in addition to compensation for the original taking—measured by the amount of daily interest (Component 1) and supplemental transfer payment (Component 2)—class members are also entitled to all investment returns earned on the allegedly taken funds over the last 26 years. Cases cited by Plaintiffs do not support this conclusion. Instead, controlling Ninth Circuit precedent supports DRS's proposed method of measuring Component 3 as prejudgment interest.

Just compensation for a Fifth Amendment takings claim is measured by "the market value of the property *at the time of the taking*.'" *Horne v. Dep't of Agriculture*, 576 U.S. 350, 368-69 (2015) (quoting *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984)) (emphasis added). This Court previously found "the taking at issue occurred prior to January 2002, and, for most class members, in 1996-1997." Dkt. 171 at 10:15-16. Thus, just compensation for Plaintiffs' takings claim must be measured at the time of the taking, when their funds were transferred to Plan 3. Components 1 and 2 (once properly computed) account for the taking.

The only further measure of damages recognized by federal takings law is prejudgment interest, which DRS proposes should constitute damage Component 3. The Ninth Circuit

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 21
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

explained in *Schneider v. County of San Diego*, 285 F.3d 784 (9th Cir. 2002), that where "the property owner was not compensated until long after the taking, 'just compensation' requires an award of prejudgment interest." *Id.* at 787. "Prejudgment interest is a measure that 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Id.* at 789 (quoting *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987)). Prejudgment interest in a Fifth Amendment takings case is measured by the amount "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal" would receive. *Id.* at 792.

Plaintiffs instead assert that, in addition to just compensation for the original taking, they are entitled to earnings on the allegedly taken funds over the last 25+ years. DRS disagrees that the allegedly taken funds sat in the trust fund. But even if they did, this theory of damages contravenes established law that "the 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain." *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235-36 (2003); *see also United States v. Fuller*, 409 U.S. 488, 492 (1973) ("the Government as condemnor may not be required to compensate a condemnee for elements of value that the Government has created"); *U.S. ex rel and for Use of Tenn. Valley Auth. V. Powelson*, 319 U.S. 266, 281 (1943) ("it is the owner's loss, not the taker's gain, which is the measure of compensation for the property taken."). Indeed, Plaintiffs admit that Component 3 of their proposed formula seeks to do precisely what the law does not allow: "Measur[e] [their] loss by the amount DRS gained." Motion at 18:10-11.

Plaintiffs' reliance on *Phillips*, *Webb's*, and *Schneider v. California Dep't of Corrections* is misplaced. Those cases all involve issues of liability; they do not speak to the measure of damages in a takings case. In *Phillips*, the Supreme Court held that interest earned in a special type of account used by lawyers to temporarily deposit client funds, called an Interest on Lawyers Trust Account (IOLTA), was private property of the client that may give

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 22
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  rise to a takings claim. *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 172 (1998).

2  Similarly, in *Webb's* and *Schneider v. California Dep't of Corrections*, the courts held that the

3  taking of interest earned in an interpleader fund and an inmate trust account violated the Fifth

4  Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 499 U.S. 155, 155–56 (1980);

5  *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1201 (9th Cir. 1998). These cases

6  simply stand for the proposition that the absence of daily interest on contributions to TRS Plan

7  2 may give rise to a takings claim. In *Fowler I*, the Ninth Circuit relied on *Phillips* and *Schneider*

8  *v. California Dep't of Corrections* to find Plaintiffs stated "a takings claim for daily interest

9  withheld by DRS." *Fowler I*, 899 F.3d at 1119. In short, these cases analyze whether a taking

10  took place, not the computation of just compensation once a taking is found.

11  Plaintiffs' reliance on *Goldberg*, a Seventh Circuit case, is equally unavailing. *Goldberg*

12  expressly stands for the limited holding that for a takings claim, a plaintiff may recover

13  prejudgment interest if the property "is able to earn net interest," regardless of whether the

14  property was "in an interest-bearing account before its transfer to the state." *Goldberg v.*

15  *Frerichs*, 912 F.3d 1009, 1011-12 (7th Cir. 2019). Any language in *Goldberg* regarding the

16  measure of prejudgment interest is dicta. Regardless, the Ninth Circuit's reasonably prudent

17  investor standard for measuring prejudgment interest controls.

18  Finally, Plaintiffs argue they are entitled to investment returns under the law of trusts,

19  the Plan 3 statute, IRS procedures, and restitution. But "the just compensation remedy for a

20  taking is constitutional in nature." *Schneider v. County of San Diego*, 285 F.3d at 794; *see also*

21  *United States v. Easements and Right-of-Way over a Total of 15.66 Acres of Land*, 315 F. Supp.

22  3d 1353 (N.D. Ga. 2018) ("Federal law, not state law, govern just compensation in a federal

23  condemnation action.") (citing *United States v. Miller*, 317 U.S. 369, 379-80 (1943)). Plaintiffs

24  cite no cases that funds allegedly taken and subject to a Fifth Amendment claim can

25  simultaneously be considered "held in trust" and subject to trust law, or subject to correction

26  procedures set out in the Plan 3 statute or IRS procedures. Restitution is equally inappropriate

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 23
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

because it directly contradicts established takings law that just compensation is not intended to disgorge the government's gain. In short, federal takings law governs the award of damages in this case.

### 2. Plaintiffs Fail to Prove an Appropriate Prejudgment Interest Rate under *Schneider*.

Plaintiffs are not entitled to summary judgment on Component 3 because there is a dispute of material fact as to the reasonable prejudgment interest rate under *Schneide*r. Plaintiffs appear to suggest that even if *Schneider* governs, their proposed 8.92% rate of return meets the reasonably prudent investor standard. *See* Mot. at 24:23-25:11. Not so. Determination of prejudgment interest for a Fifth Amendment takings claim "is a finding of fact." *Schneider v. County of San Diego*, 285 F.3d at 790. In *Schneider*, on remand, the district court awarded approximately $49,000 in prejudgment interest on a "taking" of $68,000, which equates to roughly a 72% total return over 13 years. *See Schneider v. County of San Diego*, Case No. 90-1738-H-POR, Dkt. 389 at 6 (S.D. Cal. Sept. 10, 2002). Here, Plaintiffs seek prejudgment interest of approximately $124 million on an alleged "taking" of approximately $13 million, which represents an over 954% return over the 23–29 years since the TRS Plan 3 transfer dates.[6] At minimum, there is a dispute of material fact regarding whether Plaintiffs' claimed rate of return employs the standard of a "reasonably prudent investor who is maintaining the safety of principal." *Schneider v. County of San Diego*, 285 F.3d at 792. DRS contends it does not. Contrary to Plaintiffs' assertion, the returns earned by WSIB (professional money managers investing very large sums for the purpose of long-term gains needed to fund state pensions) do not represent returns attributable to an individual prudent investor.

---

[6] These amounts are taking from paragraph 41 of the Marshall Declaration and represent Plaintiffs' requested relief. DRS disputes these numbers.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 24
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

3. **Even if the Court Adopts Plaintiffs' Formulation of Component 3, Disputes of Material Fact Preclude Summary Judgment.**

Even if the Court determines Component 3 should be measured accordingly to Plaintiffs' theory, it should still defer ruling on the actual amount due under Component 3. For the same reasons discussed above, there are numerous issues of fact that preclude summary judgment as to the actual calculation of Component 3. As with Components 1 and 2, the Marshall Declaration provides no mathematical formula for DRS to assess the calculation of Component 3. *See* Blocki Decl. ¶¶13, 23. The start date and end date used by Marshall for Component 3 are unclear or appear to overcompensate some Class Members. *See id.* ¶¶24-25. Plaintiffs' proposed 8.92% is not an appropriate rate of return, because it does not consider the relevant period for measuring returns. *See id.* ¶26. And the Marshall Declaration does not explain whether Marshall compounded the investment returns, and, if so, at what frequency. *See id.* ¶27. These disputed issues of material fact, among others, render summary judgment wholly inappropriate.

## V.    CONCLUSION

Plaintiffs' Motion is unsupported by their factual submissions and unsupported by the law. It should be denied.

DATED March 14, 2025March 14, 2025.          Respectfully submitted,


K&L Gates LLP


By _s/ Philip M. Guess_
   Robert B. Mitchell, WSBA # 10874
   Philip M. Guess, WSBA #26765
   Todd L. Nunn, WSBA # 23267
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Phone:  (206) 623-7580
Fax:  (206) 623-7022
Email:    rob.mitchell@klgates.com

philip.guess@klgates.com
todd.nunn@klgates.com

*Attorneys for Defendant*

<u>LCR 7(e)(6) Certification</u>
I certify that this memorandum contains
<u>8334</u> words, in compliance with the Local
Civil Rules.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## <u>CERTIFICATE OF SERVICE</u>

2

I, Philip M. Guess, certify that on March 14, 2025, I caused the foregoing document to

3

be electronically filed with the Clerk of the Court using the CM/ECF system, which will

4

automatically send email notification of such filing to the registered attorneys of record.

5

Dated March 14, 2025.

6

7

/s/ Philip M. Guess
Philip M. Guess, WSBA #26765

8

K&L Gates LLP

9

925 Fourth Avenue Suite 2900
Seattle, WA  98104

10

(206) 623-7580
Email: philip.guess@klgates.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO
DETERMINE FORMULA FOR INJUNCTIVE RELIEF - 27
Case No. 3:15-CV-05367-BHS

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022